WATERS *vs.* CREAGH, ex'or.

1. Where A, being the surety of B, in a bond to two executors, was told by one of them, that *the principal had settled the matter and the surety need not trouble himself about it*; held, that this was equivalent to saying the note was paid and discharged; and on testimony newly discovered, Chancery relieved the surety against a judgment on the bond, after payment of the amount thereof, to the sheriff.
2. In such case, the complainant having excused a defence at law, by averring in his bill, the death of one who heard the words of the executor; held, that the complainant was not bound to state in his bill the name of him thus present at the conversation.
3. It seems, the rule, requiring two witnesses to disprove a responsive denial, in an answer in Chancery, does not apply, where the defendant refers to facts not within his own knowledge, and where he gives no satisfactory reasons for having such knowledge of the facts denied, as would justify a response in the negative.
4. Thus, *it seems,* two witnesses would not be necessary to disprove the answer of an executor, denying an allegation in the bill, referring to facts within the knowledge of a deceased co-executor, where the respondent is a stranger to such facts, and gives no explanation of the manner in which he acquires information respecting them.

In this case, which was in the Chancery Court of Mobile, Stacey B. Waters, by bill, prayed relief against a judgment recovered against him, at law,

WATERS *vs* CREAGH, ex'or.

by Creagh, surviving representative of one Mitchell. These were the facts relied on in the bill :

On or about the — day of ———, in the year ———, the said Stacy became bound, as the surety of one Bidgood, in a bond, executed to Bayard and Creagh, executors of the last will and testament of said Mitchell. Waters, the complainant, and surety of the bond, having, in the life-time of Bayard, doubted that his principal, Bidgood, would continue solvent, called upon Bayard, and urged upon him the necessity of proceeding, at once, against Bidgood : as to which Bayard informed the complainant, that Bidgood had paid or settled the said bond; and that Waters need not give himself further uneasiness about it. After this event, and subsequent to the death of Bayard, Creagh, as the surviving representative of Mitchell, instituted an action at law, against Waters, upon the bond.

The witness, who heard the conversation from Bayard to Waters, (but whose name was not stated in the bill,) being dead, Waters was compelled to suffer a judgment against him; the amount of which he paid over to the sheriff, and which was for the sum of two hundred and seventeen dollars. After the rendition of the judgment against Waters, and after the payment of the amount thereof to the sheriff, the complainant discovered, that one Fairweather was present when Bayard made the statement aforesaid, that Bidgood, the principal, had dischrged the bond. The complainant, therefore, averring his ignorance, that this matter was known to any living witness, before the rendition of the judgment against him, prayed relief of the Chancellor, and asked an

injunction, restraining the sheriff from paying over the money collected to Creagh.

Creagh, in his answer, acknowlenged that he was the surviving executor of Mitchell, and, as such, had recovered a judgment against the complainant, as surety upon the bond of Bidgood. He averred, however, that he had no knowledge, nor did he believe, that the said Bidgood had ever paid to Bayard, his co-executor, the amount of the bond : that, to be sure, about the time Bidgood's bond became due, Bayard had placed in the hands of the respondent a note, on one Brienly—informing him that the proceeds, when collected, were to be applied to the discharge of Bidgood's bond: respondent averred, however, that he did not believe one cent had ever been collected from Brienly, on his note.

Respondent further stated, that from his intimate knowledge of the conduct and character of Bayard, he was confident the said bond of Bidgood had not been paid, or Bayard would have informed him of it: and he considered it strange, that Waters, in his bill, did not state the name of the deceased witness, who had, as pretended, heard Bayard's remark. The respondent, alleged, that he was acting not in his own right, but that of the said Mitchell, and prayed a dismissal of the bill.

David Fairweather, being examined as a witness, deposed, that about the year, 1819, or '20, being in company with Waters, the complainant, he heard the latter ask Bayard what was to be done, in relation to a bond of Bidgood, on which Waters was surety; and which Bayard held, as the executor of Mitchell: that

Bayard replied, that Bidgood had settled the matter and Waters need not trouble himself about it.

At Spring term, 1832, the cause coming on to be heard, on the bill, answer and the testimony of Fairweather, the Chancellor dissolved the injunction and dismissed the bill—rendering a decree in favor of Creagh, for the amount of the judgment at law, interest and costs, &c.

The complainant took an appeal to this Court, and assigned the decree below as error.

*Goldthwaite,* for the appellant.
*Stewart,* contra.

TAYLOR, J.—The ground upon which the bill is filed, is testimony discovered since the trial at law, which proves, that the note, upon which a recovery had been had against Waters, and which he had executed as security, had been discharged by the principal, long before the suit at law was brought.

It is insisted, that there is no equity in the bill, for two reasons—

1st. Because the complainant was bound to know who was present at the time the conversation was had with the deceased executor; and

2d. Because a payment is not charged to have been admitted, by the executor, but merely a settlement, which, in fact, may have amounted to no discharge at all.

I can not agree, that the complainant was bound to know all the persons who might have been present when the conversation took place. He may have requested the man who died before the institu-

tion of the suit at law, to pay attention to what passed, with the view, if ever necessary, of using him as a witness; and it is unreasonable to suppose, that any person could recollect all who casually heard a conversation which took place years before, no matter how interesting that conversation may have been to him.

The words used by the deceased executor, as charged in the bill, are, that the principal "had paid or settled the bond, and he," (the security) "need give himself no further uneasiness about it."

The words "paid" and "settled," when used in common conversation, in relation to a debt, are understood equally as conveying the idea, that the debt is discharged; particularly when in reply to the question of one so deeply interested in knowing, as the security : it is said, that the principal has "settled" the debt, and that he need give himself no further uneasiness about it.

The next question is, does the proof sustain the allegations of the bill?

The witness testified, that he heard a conversation between Waters and the deceased executor, at the store of the latter, and heard Waters inquire, "what was going to be done with a note then held by Bayard, (the deceased executor,) as the partner or executor of Mitchell, deceased, executed by Samuel B. Bidgood, and the said Waters, his security, for about the sum of one hundred dollars. That Bayard told Waters, that he and Bidgood had settled the matter, and that Waters need not trouble himself about it." The witness also testified, that Waters was informed of what he knew on the subject,

after the judgment at law was obtained against him, by an accidental conversation between them, arising from an application made by him, to Waters, for money which he owed him, when Waters replied, he could not pay him, because he had money to pay to the sheriff on account of Bidgood: which produced a communication from witness, of his being present at the conversation between Waters and Bayard.

Thus the material allegations of the bill are sustained, both as respects the acknowledgments of Bayard, and the discovery of the testimony subsequently to the trial at law. I shall not enter upon an examination of the effect of the words used by Bayard, to lull Waters, the security, into a belief of his safety, and thus discharge him from his responsibility, as security. It seems to me, without rebutting proof, they would have afforded a sufficient defence to the principal himself.

But it is said, the denial of the defendant is only balanced by the evidence of one witness, and that there should be the corroborating testimony of another witness or strong circumstances, to authorise a decree in favor of the complainant. There is, however, no denial of the charges of the bill, to be found in the answer, and if there were, unless the defendant had given satisfactory reasons for having such a knowledge of the facts as would justify him in thus responding in the negative, the rule requiring two witnesses to disprove a responding denial of a defendant in chancery, could not apply.

If a defendant who had no apparent means of knowing any thing of the facts charged, who appears to have been a stranger to them, makes positive

averments, in his answer with respect to them, without explaining the manner in which he acquires a knowledge justifying such positive averment, surely the answer could weigh no more than the evidence of a witness testifying to facts which transpired an hundred miles from him, without explaining by what means he became conusant of the facts to which he deposes.

For these reasons, I think the decree should have been in favor of the complainant—and this is the opinion of the Court.

The decree is therefore reversed, the injunction, except for the costs, is perpetuated, and the sheriff is ordered to refund the amount collected by him, except the costs, to the complainant; it is further ordered, that the defendant recover of the complainant, the costs of this suit which accrued in the Circuit Court, and that complainant recover the costs of this Court.