# McDonald *et al.* v. Pearson.

*Bill in Equity in Nature of Bill of Review seeking to Impeach Decree for Fraud.*

1. *Demurrer to bill in equity; how considered on appeal; no presumption of error.*—When a demurrer to a bill in equity, assigning various grounds, is sustained generally without specifying the cause of de-

[McDonald et al. v. Pearson.]

murrer sustained, the decree will on appeal be referred to such grounds as will support it, if any; and if any of the grounds are well taken, the decree will be affirmed, even though others may be illy taken. (*S. & N. Ala. R. R. Co. v. H. A. & B. R. R. Co.*, 104 Ala. 233, overruled, so far as it holds to the contrary.)

2. *Fraud; how pleaded.*—When fraud is relied upon either as a cause of action or matter of defense in law or in equity, the facts constituting it must be positively stated, so that the court can see clearly that fraud existed.

3. *Proof of fraud; presumption.*—While fraud is never presumed, and will not be imputed when the facts are consistent with honesty and good intention, still it need not be shown by positive testimony to the exclusion of all reasonable doubt as to its existence; but it can be proved by circumstantial evidence, showing the facts and circumstances attending and connected with the particular transaction involved.

4. *Same; when question of law, and how determined.*—When the facts alleged to constitute fraud are specially pleaded and are clearly and distinctly stated, it becomes a question of law and not of fact; and if the sufficiency of the facts averred is questioned by a demurrer, the same construction must be given them as when considered as evidence.

5. *Decree obtained by fraud; jurisdiction of equity to grant relief.* A court of equity has jurisdiction to vacate judgments and decrees obtained by fraud; but in the exercise of such jurisdiction the judgments and decrees of courts of competent jurisdiction can only be impeached and vacated for actual or intentional fraud in the procurement thereof, as distinguished from fraud which would vitiate the cause of action, and would constitute a defense to the suit.

6. *Same; same.*—A bill seeking to annul a final decree for fraud, which shows a state of facts consistent with honesty of intention and does not disclose any fiduciary relationship, does not show such fraud as would justify the impeachment of the decree, and is demurrable for that reason.

7. *Same; same; case at bar.*—A bill to vacate, on the ground of fraud, a decree in behalf of defendant for attorney's fees, rendered in a suit by complainant, as beneficiary, against his trustee, for a final settlement, averred that defendant, the trustee's attorney, was opposing a decree in said cause, and was approached by complainant to obtain his consent to such decree, and that, thereupon, in the presence of complainant's solicitor, defendant insisted, as a condition to his non-resistance, that he be paid for his services to the trustee, and represented that the trustee owed him $1,000 for fees; that such representations were untrue, and complainant, having no means of knowing how much was due him, but relying on his statements, consented to allow him $750; that pursuant to the understanding between them, a petition was filed by defendant for allowance of fees, and, on reference, complainant testified that $750 was a proper charge for defendant's

services, said testimony being given in reliance on defendant's representations and *pro forma*, as carrying our their agreement; that complainant, on obtaining possession of the trustee's papers, discovered that defendant, six years before the decree, rendered his bill against the trustee, which was settled by note; and that receipts given by defendant showed that he had been paid $300 on the note, and $50 on account of attorney's fees. *Held*: That fraud to authorize vacation of the decree was not shown.

8. *Bill of review impeaching decree; right to file; allegations.*—An original bill in the nature of a bill of review seeking to annul a decree for fraud can be filed without leave of the court; but to be sufficient, the bill must state the decree and the proceedings which led to it, together with the circumstances of fraud on which it is impeached.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. H. A. SHARPE.

The complainants, who are the appellants here, exhibited their original bill in the nature of a bill of review in the city court of Birmingham against the appellee, whereby they sought to impeach, and have set aside, a decree of the city court rendered in favor of appellee.

The facts averred in the bill were substantially as follows : The decree sought to be impeached was rendered in the cause in the city court of McDonald v. McDonald, which was a suit brought by some of the complainants in this suit against W. J. McDonald, Sr., trustee under the will of Cynthia A. McDonald. That suit is described in the present bill as a suit against the trustee for an accounting and settlement of the administration of the trust estate. The proceedings are not fully or substantially set out in the bill, but its purposes and general character appear in the report of the case of *McDonald v. McDonald*, 92 Ala. 537. A decree had been rendered in said cause directing the sum of $750 to be paid to defendant in this suit for attorney's fees "for services in said cause, and other services rendered by him to said W. J. McDonald in and about the property"—the trust estate. It is alleged in the bill that this decree was rendered by consent of complainants, acting through T. C. McDonald.

Section 7 of the bill, as amended, thus states the circumstances of the rendition of the decree : "And complainants further aver and charge that said consent obtained from T. C. McDonald, who was acting for himself

and for the complainants, to allow said Pearson the sum of $750 was procured by the fraud and fraudulent representations of said R. H. Pearson in this, and under the following circumstances, to-wit" : (then follows a recital of facts in reference to the consent decree in McDonald v. McDonald, alluded to above). Pearson "was approached by T. C. McDonald with a view of obtaining from him his consent not to resist the entering up of such consent decree. Whereupon * * * the said R. H. Pearson and the said T. C. McDonald in the presence of A. O. Lane, who was solicitor of some of the complainants (including T. C. McDonald), had a conference in which the matter was discussed and in which an agreement * * * was arrived at; * * *. said Pearson being then the attorney of the trustee, and these complainants being beneficiaries of the trust under the will. Complainants charge and aver that * * * then and there the said R. H. Pearson claimed and insisted, as a condition to his non-resistance, that he was to be paid for his services in the pending cause as well as what was due him for back services to the trustee, and he * * * stated and represented to T. C. McDonald that W. J. McDonald, Sr., as trustee, owed him over $1,000 for fees, and that he claimed and wanted it in the settlement. He also represented and stated that he had never been paid anything for services rendered for the estate, not even for writing the will of Cynthia A. McDonald. * * * Whereupon, upon the said T. C. McDonald stating in substance that if said Pearson had been so tardy he ought to be barred by the statute of limitations, the said Pearson represented and stated in substance that while he had collected very little, yet, he had collected enough to keep it from being barred, and he had collected small items from time to time, which had prevented it from being barred; which said representations and statements of said R. H. Pearson, as to the indebtedness of the trustee to him, and as to having collected nothing, or only small amounts, and as to having been paid nothing for writing will, were untrue; and the said R. H. Pearson had no reasonable grounds for believing that such statements were true; and the said T. C. McDonald for himself and for complainants, relying upon the truth of such statements made by said R. H. Pearson, consented to allow him the sum of $750."

[McDonald *et al.* v. Pearson.]

It was further averred in the amended bill, that on
" the 22d day of June, 1891, a petition was filed in said
cause in the name of W. J. McDonald, Sr., trustee, by
R. H. Pearson, attorney, signed by the said R. H. Pear-
son, attorney, in h is own handwriting, stating, among
other things, in substance, that R. H. Pearson was en-
titled to be paid for legal services out of the trust estate,
and that it be referred to the register  *  *  .*  to as-
certain a reasonable and proper amount to be allowed
said Pearson for his services in aid of the trustee and in
aid of the estate." It is then alleged that at the time
the said petition was filed, T. C. McDonald, represent-
ing complainants, had already had the conference with
appellee spoken of above and detailed in Section 7, and
had, upon said representations of appellee, agreed that ap-
pellee be allowed the sum of $750 " out of the said trust
estate, and that a consent decree be taken for that
amount, and said petition was filed in pursuance of that
understanding, and for the purpose of having that
amount decreed, in accordance with their agreement
and understanding made after and based upon " the
said representation.

It also averred that after the petition was filed, a ref-
erence was had to the register on June .25th, and said
T. C. McDonald "appeared before the register and de-
posed concerning the matters referred to the register in
said decree of June 25, 1891;" the matter so referred
being, among other things, the ascertainment of claims
of creditors. His testimony as to the charges and claims
of creditors, so far as the attorney's fees are concerned,
was as follows: "The following are just and proper
charges of claims of creditors that should be paid out of
the rents:  *  *  *  Fee of Lane & White, attor-
neys for complainants in this cause [*McDonald v.
McDonald*]  *  *  $500. Fees of John M. Martin,
*  *  *  $75. Fees of R. H. Pearson for services in
this cause and other services rendered by him to W. J.
McDonald, Sr., in and about the property named in bill
of complaint, $750."

The register made his report, and on the 27th day of
June, 1891, the court entered a decree whereby W. J.
McDonald, Sr., was removed as trustee, and T. C.
McDonald and another of complainants were appointed
as trustees ; "and among other things it was further de-

creed that said trustees out of the rents  *  *  *  were authorized and directed to pay R. H. Pearson  *  *  * $750." It is averred that at the time the decree was rendered, W. J. McDonald, Sr., was *non compos mentis*, and a guardian *ad litem* had been appointed for him, and it was known that his death was a matter of only a short time; and that when T. C. McDonald gave his testimony before the register, as aforesaid, he had no knowledge of the status of defendant's claim against the trust estate, "except from statements and representations of R. H. Pearson, which he relied upon and which he then believed to be true; and said testimony was given *pro forma*, as carrying out the agreement which the parties had reached as aforesaid."

The amended bill further averred that at the time of the "said consent" that said sum be "allowed the said W. J. McDonald, Sr., as attorney fees due said R. H. Pearson, they had no means of knowing, and did not know, how much was really due said R. H. Pearson for such services and attorney's fees;" the said W. J. McDonald's papers "and accounts not being under the control of your orators and oratrix, and they having no means or opportunities of knowing how much, if any, (except from the representations of said R. H. Pearson) was due him," except for services in the then pending case. Complainants further alleged that until after the death of W. J. McDonald, Sr., "his papers were in the custody of his wife, who was hostile to complainants, or some of them, and who would not allow complainants access to them."

The bill as amended, then proceeds to aver that after the death of W. J. McDonald, Sr., complainants came into possession of his papers, and "discovered the fact that said R. H. Pearson  *  *  *  had made out, on the 16th day of January, 1885, his bill against the said W. J. McDonald, which was settled by note on the 4th day of June, 1888," a copy of the account being attached as exhibit A. to the bill. "And upon coming into possession of the papers of the said W. J. McDonald, trustee, complainants found two receipts, which the said R. H. Pearson had given to the said W. J. McDonald, in his own handwriting, showing that he had been paid $300 on said note" of June 4, 1888, and $50, on account of attorney's fees. Copies of the receipts were made

exhibits. It appeared that the $50 receipt was given to W. J. McDonald in his individual capacity, and the bill does not allege that the payment was by him as trustee. The bill does not negative the idea that Pearson had rendered services to the trustee after January, 1885, or after June, 1888, when the note was given. After finding these receipts, and some time after the decree was rendered, and after $600 was paid under it, T. C. McDonald called on R. H. Pearson, and without stating that the receipts had been found, asked appellee to furnish him with a statement of his fees, "so he could show the children the amount he had paid off with $750," and appellee furnished him with a statement, a copy of which is attached to the bill as an exhibit.

The prayer of the bill as amended is, that the decree requiring $750 to be paid to the defendant "be vacated and held for naught," and that the latter be required to refund and pay over to complainants the said sum, "or if that may not be, that he be required to refund the amount received over and above the amount he was entitled to," and for general relief.

To the bill as amended the defendant demurred upon the following grounds :

"1. The pleadings and proceedings in the said cause of *McDonald v. McDonald* are not fully or substantially set out on the bill as amended.

"2. It does not appear that application was made or leave granted to file said bill.

"3. The bill as amended shows that it seeks to impeach a decree which was rendered by a court of competent jurisdiction upon the sworn testimony of one of the complainants, and does not show any sufficient reason why the alleged facts now relied on were not produced at the time of or before the rendition of said decree.

"4. For that the matters sought by the bill, as amended, to be inquired into have been passed upon and adjudicated by a former decree of this court rendered in the cause of *McDonald v. McDonald* referred to in the bill, and fails to show any such state of facts as will constitute or show fraud in the procurement of the decree and authorize the court to set aside or vacate the said decree.

"5. The bill shows that the complainants and their said agent, T. C. McDonald, were not led into the alleged

consent to the decree complained of by the representations of defendant, but that they consented for purposes of their own, in order to bring about another decree in the case then pending of *McDonald v. McDonald* which they thought would be beneficial to themselves.

"6.  For that the allegations of the bill as amended do not show fraud.

"7.·  The bill does not ·allege or show any intentional fraud or misrepresentation, nor any such conduct on defendant's part as will warrant the court in vacating the decree complained of.

"8.  For that the bill as amended fails to show any right in T. C. McDonald to rely upon defendant's statements, and does show that they (defendant and McDonald) were in adverse interest, and that by reasonable diligence the said T. C. McDonald or the other complainants could have produced or the court have required the production of all the papers, receipts and vouchers in the possession of said trustee and pertaining to said trust estate.

·"9.  For that the complainants in their bill as amended seek to take advantage of the *laches* of their agent, T. C. McDonald, and thereby would deprive the defendant of valuable rights.

"10.  For that the decree complained of was entered by consent of the parties to the bill as amended.

"11.  The bill fails to show that complainants used sufficient or proper diligence to ascertain the alleged new ·or newly discovered evidence before the rendition of the decree complained of, and does show that no such sufficient or proper diligence was used, and that complainants by their agent, T. C. McDonald, actively participated in the procurement of the decree, testifying therein."

On the submission of the cause on the demurrer to the bill as amended, the court rendered a decree sustaining the demurrer.  The complainants appeal from this decree, and assign the rendition thereof as error.

CABANISS & WEAKLEY, for appellants.—1./ Although it may not appear on the face of the record that a judgment or decree was rendered by consent, yet it may be shown *aliunde* that ·it was in fact a consent decree.  It is not necessary to constitute a judgment one by consent that it should be stated on the ·record that the

decree was made by consent of parties, and not after a regular contestation *inter partes.—Armstrong v. Cooper* 11 Ill. 540.

2. Fraud, in equity, includes all willful or intentional acts, omissions and concealments, which involve a breach of either legal or equitable duty, trust or confidence, and are injurious to another, or by which an undue or unconscientious advantage over another is obtained.—2 Pomeroy Eq. 354, § 873; *Kennedy v. Kennedy*, 2 Ala. 571.

3. Fraud vitiates the most solemn proceedings, even decrees obtained by consent. And when consent to a decree is obtained by fraud, an original bill is the proper way to reach it.—*Curry v. Peebles*, 83 Ala. 225; *Newlin v. McAfee*, 64 Ala. 357; *Eslava v. Eslava*, 50 Ala. 32; *Lee v. Lee*, 55 Ala. 590; *Humphreys v. Burleson*, 72 Ala. 1. Fraud may consist of misrepresentations or concealment—*suggestio falsi* or *suppressio veri*, or both may concur.

4. While the untrue statement must be believed and acted on, it need not be the sole inducement; others may concur with it in influencing the party.—2 Pomeroy's Eq., § 890, p. 374. And where statements are made of facts, and especially where they are concerning matters which from their nature or situation may be assumed to be within the knowledge of the party making them, the party to whom made has a right to rely on them. In the absence of any knowledge of his own, or of facts which should arouse suspicion or cast doubt upon the truth of the statements, *he is not bound to make inquiries and examine for himself.* It does not under any circumstances lie in the mouth of the person asserting the facts to complain because the other took him at his word.—2 Pomeroy's Eq., § 891, pp. 375, 376. Positive representation of a fact can not be counteracted by the implication that the party *might* have ascertained to the contrary; under such circumstances he need not institute an independent investigation.—2 Pomeroy's. Eq., § 895, p. 381.

5. It has oftentimes been held that a court of equity will not relieve against a judgment or decree of another tribunal except for fraud, accident or mistake, unmixed with fault or neglect of the party complaining, and that the fraud must be fraud "in the concoction of the de-

cree." These principles relate to cases in which there is a *real contestation or litigation* in the first instance. Even in such cases, a defendant who has no intimation of the existence of a defense, and who believes the claim valid, is not put on inquiry.—Freeman on Judgments, § 507. When a party by the misrepresentations, by the fraud or deception of his adversary, is lured into security, or is induced to abstain from entering into active litigation, there is no *real contestation*, no real hearing and adjudication, and the judgment and decree is not what on its face it purports to be, the determination and sentence of the court upon the merits of the controversy. Under these circumstances there is fraud "in the concoction of the decree."—*Humphreys v. Burleson*, 72 Ala. 1.

6. Where a decree appears on its face to have been rendered by consent, or where it appears *aliunde* to have been rendered without any actual contestation, but by consent, the fraudulent procurement of the consent of the parties, constitutes, in this class of cases, such fraud in the procurement of the decree as will authorize a court of equity to set it aside.—2 Daniel Ch. Pr., § 1585; *Guild v. Phillips*, 44 Fed. Rep. 451; *Moore v. Barclay*, 23 Ala. 751, 793. There are many cases, of which *U. S. v. Throckmorton*, 98 U. S. 61, is one, holding that the fraud must be in regard to some matter extrinsic of and collateral to the thing tried by the first court, and not a fraud relating to the cause of action; but in all of those cases there had been a real litigated case. They were not cases of consent decrees, in which the consent was procured by fraudulent misrepresentation. This case is rather ruled by *Humphreys v. Burleson*, 72 Ala. 1, and is very similar in some of its features to *Guild v. Phillips*, 44 Fed. Rep. 461, in both of which cases the complainant was held to be entitled to relief. This case is, we submit, brought directly within *Humphreys v. Burleson, supra,* by the fact of the fidiciary relationship of Pearson to the trustee and the beneficiaries of the trust.

7. A man is not bound to present to a court in which a judgment was rendered a fact of which he knew nothing, and of which he had no cause to suspect anything, and to which he was in no manner privy; and where a party without negligence is ignorant of facts

[McDonald *et al.* v. Pearson.]

constituting such defense at the time of the rendition of judgment, equity will relieve against it.—*Reed v. Harney*, 23 Ark. 44; *Wales v. Bank*, Har. (Mich.) 208; *Merrill v. Bank*, (Cal.) 29 Pac. Rep. 242.

E. K. CAMPBELL, *contra.*—1. Where the decree appealed from does not show a ruling on the ground of demurrer separately, it will be affirmed if any one of the grounds of demurrer is good.—*Goldsby v. Goldsby*, 67 Ala. 560.

2. A decree by consent or otherwise, is conclusive and a bill of review will not lie against it unless there was fraud in obtaining it.—*Gifford v. Thorn*, 9 N. J. Eq. 702; *Thompson v. Maxwell*, 95 U. S. 391; *Throckmorton's Case*, 98 U. S. 61.

3. In a bill of review, or a bill in the nature of a bill of review, all of the proceedings in the original cause must be set out.—*Goldsby v. Goldsby*, 67 Ala. 560; *Brewer v. Bowman*, 20 Amer. Dec. 158, note. In a bill of review, or a bill in the nature of a bill of review, for newly discovered evidence, it must be shown that the new matter could not, by the use of reasonable diligence, have been known to complainants, and any *laches* or negligence in not having discovered it before the decree was rendered, is fatal to relief.—*Murrell v. Smith*, 51 Ala. 301; *Watts v. Burnett*, 56 Ala. 340; *Peterson v. Blanton*, 76 Ala. 264; *Livingston v. Hubbs*, 3 Johns. Ch. 124; *Wiser v. Bleachley*, 2 Johns. Ch. 488; *Brewer v. Bowman*, 20 Amer. Dec. 158, note.

4. Fraud alone will not give title to relief. Fraud and injury must concur.—*Overden v. Wiley*, 30 Ala. 709; *White v. Crow*, 110 U. S. 184; *Stalworth v. Blum*, 50 Ala. 46. Fraud is a conclusion to be drawn from facts and circumstances, and these must be stated.—*McHan v. Ordway*, 76 Ala. 347; *Flewellen v. Crane*, 58 Ala. 627. A demurrer admits the facts that are well pleaded, and does not admit conclusions, or inferences of law or of facts.—*Birmingham W. & E. Co. v. Elyton L. Co.*, 93 Ala. 549.

5. In order to impeach a decree for fraud, it must be shown that there has been actual positive fraud and contrivance of the party obtaining it; that there was fraud in the concoction of the decree, and that but for the fraud there would be no decree.—*Patch v. Ward*, 3

·Chancery App. Cases (Law Reports) 203 ; *Throckmorton's Case*, 98 U. S. 61 ; *Dringer v. Receiver*, 42 N. J. Eq. 573 ; *Stratton v. Allen*, 16 N. J. Eq. 229 ; *Stalworth v. Blum*, 50 Ala. 46 ; *Doughty's Case*, 27 N. J. Eq. 315, 320 ; *Greene v. Greene*, 2 Gray 361 ; 2 Modern Eq. Practice (Beach), § 884 ; 2 Story Eq. Juris., § 1575 ; *Cromelin v. McCauley*, 67 Ala. 542 ; *Kimberly v. Arms*, 40 Fed. Rep. 548, 557.

BRICKELL, C. J.—The appeal is taken from a decree of the city court, sitting in equity, sustaining a demurrer to a bill ; the demurrer assigning eleven separate, distinct causes. The decree is in its terms general, that the demurrer is well taken and is sustained, not referring to either or any of the causes specially assigned. It is insisted by the appellants, that if any of the causes of demurrer were illy taken or assigned, there must be a reversal of the decree, though there were other causes well taken, and which ought to have been sustained. While the appellee insists, that if any of the causes were well taken, the decree must be referred to them, and referring it to them, an affirmance must follow. The rule of practice, as declared by the more recent decisions, is, that on an appeal from a decree sustaining or overruling a demurrer to a bill in equity, the decree will be referred to the causes of demurrer which will support it, and not to others which would render it erroneous, working a reversal.—*Steiner v. Parker*, 108 Ala. 357 ; *Tatum v. Tatum*, 111 Ala. 341. When, as in the present case, the decree is general, not specifying the causes of demurrer sustained, if there are causes which should have been overruled, without a violation of the maxim, prevailing in appellate courts, that all reasonable intendments, consistent with the record, must be made to support the judgments or decrees of primary courts, and that error will not be presumed, but must be affirmatively shown, the decree must be referred to the cause of demurrer, if any, which are all taken, and not to the others which were illy taken. Whatever may have been said, or decided in *S. & N. A. R. R. Co. v. H. A. & B. R. R. Co.*, 104 Ala. 233, to the contrary, must not be regarded as authoritative.

The object of the bill is to impeach a final decree of the city court rendered at a former term, for alleged fraud. Such a bill is commonly called an original bill

41

in the nature of a bill of review.—*Ex parte Smith*, 34 Ala. 455; Story Eq. Pl., § 426; 2 Dan. Ch. Pl. & Pr., 1585. The material causes of demurrer, to which the argument of counsel has been particularly directed, are addressed to the sufficiency of the allegations of fraud contained in the bill; and raise the further inquiry, whether these allegations, so far as they may be regarded as admitted by demurrer, disclose such fraud as will authorize the vacation of the decree.

With regard to fraud, it is the settled doctrine, that whether pleaded in law or in equity; whether relied on as a cause of action, or as matter of defense, the facts supposed to constitute it must be stated. Mere general allegations are conclusions of law, it is the interest of the pleader should be drawn, and are not admitted by demurrer. There must be a positive averment of facts from which the court can see clearly that fraud has intervened.—Story Eq. Pl., §§ 251, 639; *Flewellen v. Crane*, 58 Ala. 627; *Loucheim v. First National Bank*, 98 Ala. 521; *Reynolds v. Excelsior Coal Co.*, 100 Ala. 296.

An elementary principle is, that fraud is not to be presumed, when parties do not stand in fiduciary relations; and will not be imputed when the facts and circumstances from which it is supposed to arise are fairly, reasonably consistent with honesty of intention.—1 Story Eq. Jur., § 190; 1 Brick. Dig. 662, § 323; *Thames v. Rembert*, 63 Ala. 561; *Harrell v. Mitchell*, 61 Ala. 270; *Pollak v. Searcy*, 84 Ala. 259. By this is not intended that fraud may not be proved by circumstances; nor that in civil cases, the evidence must be so clear and convincing as to exclude all reasonable doubt of its existence. It is but seldom that it is capable of direct, positive evidence; most usually, it is the matter of inference or deduction from the facts or circumstances attending the particular transaction, or which spring from, or have some relation to, or connection with it. All that is intended, is, that the courts will not strive to force the conclusion of fraud; that the facts and circumstances relied on as evidence, must naturally and logically indicate its existence. If they are of doubtful significance, as reasonably consistent with innocence as with guilt, the proof of fraud is wanting.—*Life Ins. Co. v. Petway*, 24 Ala. 544; *Cromelin v. McCauley*, 67 Ala. 542. When the facts are specially pleaded; when what was actually

done is stated clearly and distinctly, the effect is a question of law and not of fact. If the sufficiency of the facts to constitute fraud is drawn in question by demurrer, that construction of them must prevail, which would be given to them as matter of evidence.

There is no doubt of the general jurisdiction of a court of equity to grant relief against fraud; to vacate all deeds, contracts or other instruments obtained by fraudulent practices; or to undo any and all transactions hurtful to the party complaining, which are infected by fraud. The jurisdiction extends to the vacation of the judgments or decrees of courts which have been procured by fraud. But the final judgment or decree of a court of competent jurisdiction, is impeachable only for actual fraud in its procurement. In *Patch v. Ward*, L. R. 3 Ch. App. 205, it was said by Lord CAIRNS: "Now, it is necessary to bear in mind what is meant, and what must be meant by fraud, when it is said that you may impeach a decree signed and enrolled on the ground of fraud. The principle on which a decree may be thus impeached is expressed in the case which is generally referred to on this subject, *The Duchess of Kingston's Case*, where the judges being consulted by the House of Lords, replied to one of the questions, 'Fraud is an extrinsic collateral act, which vitiates the most solemn proceedings of courts of justice. Lord Coke says it avoids all judicial acts, ecclesiastical or temporal.' The fraud there spoken of must clearly, as it seems to me, be actual fraud, such that there is on the part of the person chargeable with it the *malus animus*, the *mala mens* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him." And further it was said: "I apprehend the fraud, therefore, must be fraud which you can explain and define upon the face of a decree, and that mere irregularity, or the insisting upon rights which, upon a due investigation of those rights, might be found to be over-stated, or overestimated, is not the kind of fraud which will authorize the court to set aside a solemn decision which has assumed the form of a decree signed and enrolled." In *Ward v. Town of Southfield*, 102 N. Y. 103, it was said by EARL, J.: "It is not sufficient merely to raise a suspicion or to show what is

sometimes called constructive fraud, but there must be a false and fraudulent representation, or a fraudulent affirmative act; or a fraudulent concealment of a fact, for the purpose of obtaining an undue and an unjust advantage of the other party and procuring an unjust and unconscionable judgment. It is not practicable nor possible to formulate a rule on this subject which will be sufficient to solve all cases; but where fraudulent concealment of a fact is relied upon for the purpose of impeaching and setting aside a judgment regularly obtained, it must be an intentional concealment of a a material and controlling fact, for the purpose of misleading and taking an undue advantage of the opposite party." The books abound with cases enunciating and illustrating this doctrine.—*U. S. v. Throckmorton,* 98 U.S. 61; *Randall v. Payne,* 1 Tenn. Ch. 143; *Gifford v. Thorn,* 9 N. J. Eq. 702; *Dringer v. Receiver,* 42 N. J. Eq. 573; *Watts v. Frazer,* 80 Ala. 188; *Adler v. VanKirk Land and Construction Co., ante,* p. 551.

The allegations of the bill have been carefully scrutinized, and subjecting them to the tests of the general principles to which we have referred, we cannot reach the conclusion that they make a case of fraud practiced to the injury of the complainants; and certainly not, that they can be accepted as disclosing *actual fraud* in the procurement, or, as is often expressed, "the concoction" of the decree, justifying its vacation. There is no room for the suggestion that there was any relation of trust and confidence existing between the parties, nor that the defendant had or exercised any influence over the complainant conducting the negotiations, resulting in the agreement for the decree. The defendant was the known counsel of the trustee in the litigation pending, when the negotiations occurred, asserting rights and interests adverse to the rights and interests asserted by the complainants; he was under no professional duty to them; his relation to them was adversary rather than confidential. As is a just inference from the allegations of the bill, the complainant conducting the negotiations, would not enter upon them without the presence of his counsel, and this must have been for the purposes of assistance and advice. When transactions are had between persons standing in strictly confidential relations, as that of trustee and *cestui que trust,* from which the trustee derives ben-

[McDonald *et al.* v. Pearson.]

efit and the *cestui que trust* sustains detriment, if the *cestui que trust* has the presence and assistance of counsel of his own selection, it goes far to remove the presumption that he acted under the influence of the relation. If no such relation exists, the presence and assistance of such counsel is a significant fact that the parties are dealing ''at arm's length.'' The readiness with which the complainant, conducting the negotiations, suggested the statute of limitations as a possible or probable bar to the demand of the defendant, indicates clearly the *animus* in which he was dealing. Such a suggestion may proceed and may be expected from the wary and vigilant dealing with an adversary in interest; it is not to be expected from one reposing trust and confidence, and subject to the influence they generate.

The alleged fraud consists wholly in the falsity of statements attributed to the defendant, made during the negotiations to which we have referred. These statements must be interpreted, and their real character determined by the light of the circumstances attending them; from these circumstances they derive their true complexion, and from them they may not be disconnected, and a force and effect given them, which it may be, could properly be ascribed, if they had been made under variant circumstances and conditions. The purpose of the negotiations was not the ascertainment of the amount of the demand of the defendant, with a view to its payment or adjustment as ascertained. The city court was sitting, and according to the usual course of procedure in a court of equity, the amount could have been readily ascertained, and if the parties had not agreed, it would doubtless have been so ascertained. This procedure, with the contestation it would probably involve, was the hindrance to the rendition of a final decree, quieting the litigation in the pending suit, the complainants were seeking to expedite. With a view to obtaining an adjustment of the demand of the defendant, rather in the nature of a compromise, they drew him into the negotiations. It was not accuracy or precision of statement as to the amount of his demand, they exacted or expected from the defendant, and his statements in this regard must not be so construed and considered. It is not to be doubted from the allegations of the bill, that they were not when made, accepted or construed by the com-

plainant conducting the negotiations, as intended to be accurate or precise. What is conclusive of the real character of the negotiations, of the intent of the parties, is the fact that when they were concluded and the amount to be decreed the defendant had been agreed upon, the complainant conducting them appeared before the register, and testified that the amount agreed upon was due the defendant. The testimony was not and could not have been *pro forma*, a mere matter of form, as is now alleged in the bill. Parties may not relieve themselves from the obligation, or from the legal operation of oaths, or of testimony, by averring the one was taken, or the other given, as matter of form. The testimony was in all its parts true, when referred, as it must be, to the agreement of the parties, and indicates clearly, that the purpose of the negotiations and the conclusion of them, was an agreement, in the nature of a compromise, avoiding a contestation of the demands of the defendant, and the risks that more might be decreed him than he was willing to accept without resorting to this judicial ascertainment. It must be conceded, that it is now made to appear by the allegations of the bill, that in the course of the negotiations the defendant overestimated or overstated the amount to which he was entitled because of many of the past services he had rendered the trustee, (by which is meant other services than such as were rendered in the pending litigation), and misstated the payments which had been made him; it must be born in mind that the statements were in themselves general and indefinite, and that no degree of explicitness was demanded of him. If the allegations of the bill do not exclude the hypothesis, they can not be accepted as affirming it, that the overestimate or overstatement was intentional, with a view to deceive, luring the complainants into the agreement for the rendition of the decree. If the circumstances were ambiguous, this is the harshest construction of which they would be susceptible, and a construction, the wisdom and charity of the law does not favor.

We need not prolong the discussion of the allegations of the bill. Unless fraud is presumed when all that is alleged is reasonably consistent with fairness of intent, all that can be said is, that under circumstances not demanding, and when from him precision or accuracy of

[Henderson *et al.* v. Perryman *et al.*]

statement as to the amount of his demand was not expected, defendant may have overestimated or overstated it. Such overestimate under the circumstances is not fraud—certainly is not of itself evidence of the *malus animus*, the *mala mens*, the element of actual fraud, which vitiates a decree or judgment.

A bill of this character may be filed without leave of the court.—2 Dan. Ch. Pl. & Pr., 1584. The bill must state the decree and proceedings which led to it, with the circumstances of fraud on which it is impeached.— *Ib.* 1585. We are inclined to the opinion that the allegations of the bill in this respect are sufficient. The first and second causes of demurrer were of consequence not well taken. If the bill was filed for relief because of newly discovered evidence, it may be, the third cause of demurrer would be well assigned; but as the bill is not of that character we need not decide that question. Nor need we consider the sufficiency of the eighth, ninth, tenth and eleventh causes of demurrer; they are not material in the view we have taken of the case. The fourth, fifth, sixth and seventh causes of demurrer, directed to the sufficiency of the allegations of fraud contained in the bill, were well taken. Referring the decree to these causes, it follows that it must be affirmed.

Affirmed.