# De Soto Coal, Mining & Development Co. *v.* Hill, *et al.*

### *Bill to Enjoin Judgment at Law.*

(Decided May 21, 1914.  Rehearing denied July 2, 1914.
65 South. 988.)

1. *Judgment; Equitable Relief; Newly Discovered Evidence.*—In the absence of fraud in the act of obtaining a judgment at law, equity will not interfere, unless a defense at law was prevented because of accident or fraud, or act of the successful party, unmixed with fraud or negligence of the other party.

2. *Same; Fraud.*—Equity will not enjoin the enforcement of a judgment at law merely because of newly discovered evidence, since the reason for the exercise of such jurisdiction has ceased to exist, the courts of law now having ample jurisdiction to grant relief.

3. *Same.*—Equity will not enjoin a judgment at the suit of the unsuccessful party on the grounds of newly discovered testimony in the absence of fraud of the adverse party in obtaining the judgment, where there is no excuse for the failure to procure such evidence for the trial.

4. *Same.*—Equity will not grant relief against a judgment at law as obtained by fraud unless the fraud was practiced in the procurement of the judgment, and in the proceedings by which it was obtained, and not merely where the fraud is antecedent to the judgment, as where material testimony upon which it was rendered was false.

5. *Same; Pleadings.*—The allegations of a bill to enjoin a judgment at law must be positive, specific and explicit.

6. *Equity; Pleading; Demurrer.*—As against a demurrer to a bill in equity, the general conclusion of the pleader is not sufficient.

APPEAL from Birmingham City Court.
Heard before Hon. H. A. SHARPE.

Bill by the De Soto Coal Mining & Development Company against Jim Hill and another, to enjoin a judgment at law. From a decree sustaining demurrers to the bill, complainant appeals. Affirmed.

The bill alleges that:

Orator is a corporation existing under the laws of the state of Alabama, with its principal office at Birmingham, and that defendants are respectively, Jim Hill, a minor, and H. J. Hill, an adult, who acted as his next friend in procuring the judgment herein sought to be enjoined; that orator is authorized by its charter to engage in the business of mining, and has been and is now engaged in the operation of a coal mine in Jefferson county, and that Jim Hill on December 7, 1910, while being employed as a trapper in its said mine and while getting off the car, fell and cut his knee on some kind of sharp rock or other substance, and the wound thereafterwards, by some means unknown to orator, became infected, and it became necessary for defendant to come to a hospital at Birmingham and have an operation performed removing the knee joint. Thereafter, on March 4, 1911, said minor by his next friend, H. J. Hill, filed a suit against orator in the city court of Birmingham, claiming $40,000 as damages for said injury. [Here follows a history of the trial as to the pleadings, and as to the striking of complaint and the final issues made up, all of which are set out as exhibits to the bill.]

Orator further avers that at the conclusion of the evidence and argument, plaintiff through his attorney abandoned all of the counts of said complaint as amended except the first, sixth, seventh, and eighth, relying on the employment of plaintiff in violation of section 1025 of the Code, and disclaiming any right to recover on other counts. The jury trying the cause returned a verdict in favor of plaintiff for the sum of $5,000, and judg-

[De Soto Coal, Mining & Development Co. v. Hill, et al.]

ment was entered accordingly. [Here follows a history of the motion to set aside the judgment, the court's order overruling the motion, the preparation of the bill of exceptions, the appeal to the Supreme Court, and its judgment, together with an application for rehearing, and the overruling of same, all of which are made exhibits.] It is further averred that the judgment was entered in said cause on testimony offered by plaintiff, which your orator could not rebut, to the effect that the minor plaintiff was under 14 years of age at the time of the injury, but since the trial of said cause and a motion for a new trial, it has discovered evidence which shows that plaintiff in fact was more than 14 years of age at the time of the injury, and which evidence it is reasonably certain, if not in fact conclusive, would have resulted in a verdict in your orator's favor, had it been produced on the trial of said cause. [This newly discovered evidence is set forth in the affidavit of M. Aylor and Parton, Joella Jones, William Jones, A. S. Logan and H. H. Coffman, which are made exhibits to the bill.]

It is then averred that the failure to produce said testimony on the trial was due to no fault, neglect, or lack of due diligence or care on its part in the preparation of said cause for the trial, and presenting its motion for a new trial; but, on the other hand, it is averred that, immediately after the filing of the suit, it caused a full and complete investigation to be made of all the facts surrounding the accident to plaintiff, including the charges made in said complaint; that neither plaintiff's father nor mother was living at the time of the accident, although his father was living at the time of his employment a few months prior thereto, and it was on the written request of plaintiff's father, representing that plaintiff was more than 14 years of age, that such

employment was given him. Plaintiff's stepmother was living, but did not know plaintiff's age of her own knowledge, nor could orator ascertain from any other person any independent knowledge, but in the course of the investigation and preparation for the trial plaintiff's family Bible, and that of his grandparents, was exhibited containing entries showing that plaintiff was born on September 26, 1897, making plaintiff under 14 years of age at the time of the accident; that this Bible was exhibited by an uncle of plaintiff, a member of plaintiff's family, and that its superintendent was not an expert in handwriting, and had no reason to suspect and did not suspect, but assumed that said date was correct. It is then averred that at the time of the accident and casualty, orator had in the Maryland Casualty Company of Baltimore an employee's liability policy, protecting it against the payment of damages for injury to its employees; that said policy contained a provision that it did not cover liability for an injury to any one employed by orator contrary to law. (Then follows a description of the investigation made by the agent of the Casualty Company similar to that set out as made by the superintendent of orator, and the ascertainment from all the facts that plaintiff was under 14 years of age at the time of the accident, resulting in the finding that the boy was under 14 years of age, resulting in casting the whole defense and burden upon orator. The bill then recites the efforts put forth by orator to ascertain something of the early history of plaintiff, and finally discovering that the boy was born in September, 1896, instead of 1897, making him over 14 years old at the time of his employment, and at the time of the injury, but that at that time no course was open to orator to get the information in the record on the appeal of said cause to the Supreme Court.) It is

then averred that the evidence is not cumulative, and that it shows that the cause was without merit, and that plaintiff was in fact more than 14 years old, that the judgment is unjust and unconscionable, and that orator has exhausted every legal remedy open to it, and without the protection of this court, his property will be levied on and sold to satisfy the execution.

The demurrers raise the points discussed in the opinion.

J. T. STOKELEY, R. H. SCRIVNER and JOHN R. TYSON, for appellant. It is a well recognized principle of equity jurisprudence that newly discovered evidence showing a valid defense to an action constitutes a good ground for equitable relief from a judgment at law in the absence of negligence in failing to present such evidence on the trial.—*Wilson v. Wilson*, 21 South. 67; *Cox v. M. & G. R. R. Co.*, 44 Ala. 611; *Waters v. Craig*, 4 S. & P. 410.

VASSAR L. ALLEN and JAMES M. HANBY, for appellee. As to what the bill must contain, see *Headley v. Bell*, 84 Ala. 347; *French v. Gardner*, 7 Port. 549. The bill fails to make a proper showing for relief, and the court properly sustains demurrers.—Authorities supra.

GARDNER, J.—By this bill appellant (complainant in the court below) seeks to enjoin the enforcement of a judgment recovered against it by respondent in a suit at law in the city court of Birmingham, and affirmed by this court.—*De Soto Coal Mining & Development Co. v. Hill*, 179 Ala. 186, 60 South. 583. The averments of the bill as amended and the demurrers interposed thereto will sufficiently appear in the report of the case. Demurrer to the bill as amended was sustained, hence this appeal.

As grounds for relief, and in support of the equity of the bill, complainant seems to rely upon the averments of newly discovered evidence, knowledge of which was not obtained until after a motion for a new trial had been heard and overruled. There is no fraud or misconduct charged on the part of the appellee, but the bill is, in effect, in short, what has been termed "an application in chancery in the nature of a new trial at law." In support of the equity of the bill, appellant cites three cases from this state as follows: *Waters v. Creagh, Executors,* 4 Stew. & P. 410; *Cox v. Mobile & Girard R. Co.,* 44 Ala. 611, and *Wilson v. Wilson,* 21 South. 67. This latter case (reported as a memorandum decision in 113 Ala. 670) was a bill filed to review an equity decree. No demurrer was interposed, the opinion stating that: "The sufficiency of the bill was not in any wise questioned, but it was treated by the defendant, by filing her answer to and taking issue on it, as altogether sufficient."

The other two cases cited sought the injunction of a judgment at law, and are more nearly in point.

While the exigencies of this case may not require it, as will hereinafter appear, yet due to the importance of the question presented by this record, we deem a brief review of the authorities both proper and timely.

Anciently courts of law did not grant new trials, and in those days courts of equity exercised that jurisdiction over trials at law, and compelled the successful party to submit to a new trial when justice required it. But even then the chancery court proceeded with great caution. The history of the exercise of this jurisdiction over proceedings of courts of law, by courts of equity, by way of injunction, may be found in the note to the case of *Oliver v. Pray,* 19 Am. Dec. 608, wherein it is shown to have created some unrest and much jeal-

ousy of the common-law judges. In the same note (page 609) we find the following quotation: "Applications to a court of chancery for a new trial at law are in our time very rare. The practice, except in cases most extraordinary, has long since gone out of use, because courts of law are now competent to grant new trials, and are in the constant exercise of that right to a most liberal extent."

On the next page the author of the note cites instances in which the jurisdiction may still be exercised. He states, citing authorities, that in some particular cases a new trial has been decreed, because the evidence of the facts constituting the complete defense was not discovered until after judgment at law and the lapse of time in which he could then move for a new trial, making the following comment: "In some of these cases it appeared that the complainant, since the trial at law, had discovered a receipt in full for the demand on which the judgment was rendered against him, but, even in cases of this extreme character, it is now questionable whether jurisdiction in equity can be maintained. There must, in the language of the most eminent judges, 'be an end of litigation.' "

In the note to the case of *Little Rock, etc., Ry. Co. v. Wells,* 54 Am. St. Rep. 227, the author says: "The principle that equity will not enjoin a judgment because of newly discovered evidence merely is almost of universal application."

Mr. Pomeroy, in his work on Equity Jurisprudence (3d Ed., vol. 4, § 1365), says: "The jurisdiction of the English chancery to enjoin judgments at law, not by reason of any equitable right involved in the controversy itself, but on account of wrongful acts or omissions accompanying the trial at law, originated at a time when the law courts had little or no power to grant

new trials for such causes. To prevent a failure of justice, a distinct head of equitable jurisdiction was admitted, that of virtually granting new trials, of entertaining suits for a new trial, when a judgment at law had been thus obtained by fraud, mistake, or accident; and the injunction against further proceedings on the judgment was a mere incident of the broader relief which set aside the judgment and granted a rehearing of the controversy in the court of chancery. The original occasion for this special jurisdiction has disappeared."

The author then states that in England, and most, if not all, of the American states, either by statutes or by judicial action, courts of law have acquired and constantly exercised full power to grant new trials. To again employ his language: "In other words, the powers of the law courts to set aside verdicts or judgments are so ample as to meet all requirements of equity and justice, and the special equitable jurisdiction with respect to this matter has become obsolete in the very large majority of the states, if not all of them.    *    *    * A court of equity in general no longer assumes control over a legal judgment for the purpose of a new trial or any similar relief; it will, in a proper case of fraud or mistake, set aside such judgment, and whereever it will grant this final remedy, it will, as a preliminary and incidental relief, restrain by injunction all proceedings upon the judgment."

This question was given consideration by our courts in the case of *Norwood v. L. & N. R. R. Co.,* 149 Ala. 151, 42 South. 683, and much of the above quotation from Mr. Pomeroy is found in the opinion. In addition is found a quotation from Chancellor Kent from which, for convenience, we take the following extract: "Anciently courts of equity exercised a familiar jurisdiction

over trials at law, and compelled the successful party to submit to a new trial or to be perpetually enjoined from proceeding on his verdict.　*　*　*　But this practice has long since gone out of use, and such jurisdiction is rarely exercised in modern times, because courts of law are now in the competent and liberal exercise of the power of granting new trials."

In the case of *Hardeman v. Donaghey,* 170 Ala. 362, 54 South. 172, is also found a discussion as to when equity will interfere with the judgment at law. We can do no better than to take from this opinion a few quotations, which will be in point, as follows: "Our court, in discussing the rights to equitable relief against judgments in courts of law, in the case of *Noble v. Moses,* 74 Ala. 616, speaking through SOMERVILLE, J., says: 'There can be no controversy as to the general rule on the subject. It is settled to be that the fraud which is imputed to the plaintiff in the judgment, and for which alone a court of equity will intervene to vacate or enjoin, must be *fraud in the rendition or procurement of the judgment itself.'—Cromelin v. McCauley,* 67 Ala. 542. Or, as expressed by Mr. Story, 'the fraud must have been practiced in the very act of obtaining the judgment,' there must be 'fraud in its concoction.'—2 Story's Eq. Jur. § 1575.　*　*　*　If there be no fraud in the act of obtaining or procuring the judgment, and equitable relief be sought against the judgment on a ground which went to the merits of the original suit at law, and which would have been available in that forum, the complainant is required, as a condition precedent to relief, to prove, as well as aver, three things: First, that he has a good and meritorious defense to the cause of action, or so much of it as he proposes to litigate; second, that his failure to defend at law was not attributable to his own omission, fault, or neglect; and, third,

that it was attributable to fraud, surprise, accident, or some act of his adversary, the plaintiff in the judgment. —*Weems v. Weems,* 73 Ala. 462; *Collier v. Falk,* 66 Ala. 223; Freeman on Judg. § 486; Willard's Eq. Jur. 161-163. There will be, in other words, no interference with the judgment at law, or reopening of the litigation involved in its rendition, unless a defense at law was prevented 'because of accident, or the fraud or act of his adversary, unmixed with fault or negligence on his part.'—*Waring v. Lewis,* 53 Ala. 615; *Duckworth v. Duckworth,* 35 Ala. 70; 2 Story's Eq. Jur. §§ 887, 888."

Our statute provides for a rehearing in the court of law where a party has been prevented from making his defense by surprise, accident, mistake, or fraud, without fault on his part, by applying therefor within four months from the rendition of the judgment. Of this statute, our court, speaking through Chief Justice Brickell, in the case of *Renfro Bros. v. Merryman & Co.,* 71 Ala. 195, had this to say: "The statute is intended to provide in the court rendering the judgment a less expensive and more speedy remedy than is afforded by a resort to a court of equity in such cases. The class of cases in which the statute authorizes the court of law to interfere is precisely the class of cases in which a court of equity is accustomed to afford relief against judgments at law; and, in the numerous decisions which have been pronounced on the statute, this court has kept steadily in view the principles on which courts of equity proceed in granting the relief which a court of law may, under its provisions, extend."

This court has recently held that the statute does not take away the equity jurisdiction, but that it confers a concurrent and cumulative remedy.—*Evans v. Wilhite, et al.,* 167 Ala. 587, 52 South. 845.

In the case of *Waldrom v. Waldrom,* 76 Ala. 289, we find the following language: "A proper and due regard for the peace and interests of society requires strictness and caution in exercising the power to disturb the decrees and judgments of other courts of competent or concurrent jurisdiction, and reopening controversies, which it is the policy of the law to quiet. * * * To successfully invoke the interposition, it is not sufficient that wrong has been done, but it must be manifest that the wrong occurred because of accident, surprise, fraud, or the act of the opposite party, and without fault or neglect on the part of the party complaining."

It is thus seen by an examination of our authorities that the rule as stated in *Hardeman v. Donaghey, supra,* is that by which our court has been guided in such cases since its early history. Such also seems to be the rule in the federal court.—*Embry, Adm'r, v. Palmer, et al.,* 107 U. S. 11, 2 Sup. Ct. 25, 27 L. Ed. 346; *Crim v. Handley,* 94 U. S. 652, 24 L. Ed. 216; *Pickford v. Talbott,* 225 U. S. 651, 32 Sup. Ct. 687, 56 L. Ed. 1240.

On the point in question we are unable to find the case of *Waters v. Creagh,* 4 Stew & P. 81, supra, cited in any of our subsequent decisions. The case of *Cox v. Mobile & Girard R. Co.,* 44 Ala. 611, supra, we find cited only once in our subsequent decisions, in the case of *Beadle v. Graham,* 66 Ala. 102, where the opinion concludes with the following sentence: "This ruling is not in conflict with *Cox v. Railroad,* 44 Ala. 611; but if it were, we would not be inclined to follow that case."

These observations must lessen the weight of these cases as authority. We are aware that there are other authorities which would seem to support the conclusion announced therein.—23 Cyc. 1030, 31 L. R. A. 571, note.

We have shown that this jurisdiction originated in

the failure of the law courts to grant new trials. These courts are now held to have the inherent power to grant new trials, and by virtue of section 2846 of the Code rulings thereon are now reviewable. The reason for the jurisdiction has long since ceased to exist, and, as stated by Mr. Pomeroy, the jurisdiction itself has become obsolete. We have found no case in our state since that of *Cox v. Railroad, supra,* where our court has set aside a judgment at law for newly discovered evidence merely. In numerous authorities it has been said that where equitable relief is sought against the judgment on the grounds which went to the merits of the original suit at law, and which would have been available in that forum, the complainant is required to aver that he has a good and meritorious defense to the cause of action, or to so much of it as he proposes to litigate, that his failure to defend at law was not attributable to his own omission, fault, or neglect, and that it was attributable to fraud, surprise, accident, or mistake, or some act of his adversary.

It was said, as far back as the case of *Watts v. Gayle,* 20 Ala. 817, that: "The rule allowing parties to appeal to chancery against a judgment in another court is of great strictness and inflexibility, and it is necessary that it should be so, as otherwise the jurisdiction of that court would soon supplant that of all other tribunals."

To open the portals of equity for the review of causes determined in a court of law, for newly discovered evidence merely, however important and relevant it may have been, would, in our opinion, tend to prolong litigation, destroy the conclusiveness of judgments, and hamper the administration of the law. For the repose of society, for the public good, there must be an "end to litigation."

[De Soto Coal, Mining & Development Co. v. Hill, et al.]

We, therefore, decline to thus extend the rule as recognized in the case of *Cox v. Railroad, supra,* and *Waters v. Creagh, supra;* and in so far as these authorities are in conflict with this opinion they are hereby overruled.

We stated in the outset that the necessities of this case did not require a review of the authorities as herein given. This we stated for the reason that in any event the complainant's averments failed to acquit it of negligence. In a bill of this character, to obtain an injunction against a judgment at law, the allegations must be positive, explicit and certain.—23 Cyc. 1040. Complainant must show diligence, and the facts relied on must be averred. Facts must also be averred which show the complainant free from fault and not lacking in diligence. As against a demurrer, the general conclusion of the pleader is insufficient.

The bill shows the pendency of this suit at law for approximately nine months before the trial, each count of the complaint alleging the age of the boy to have been under 14 years at the time of the injury. The bill shows that the complainant made inquiry of the respondent's relatives, and of other persons in the neighborhood where the respondent lives and was reared, as to his age; that neither his father nor his mother was living at that time; that the respondent's stepmother, with whom the boy was living at the time of the accident, did not know his age of her own knowledge, but that in the course of its investigation there was shown to its agent the family Bible, showing the birth of the boy to have occurred on September 26, 1897, the said Bible being exhibited by the boy's uncle. The complainant did not suspect the entry to be incorrect.

It is further alleged that at the time of the accident the complainant carried insurance with the Maryland

Casualty Company, which provided that said company would defend at its own expense suits for such injuries, but that the policy did not cover liability for an injury to one employed in a mine contrary to law; that the agent made investigation, and there was exhibited to him the said family Bible; that the said agent relied upon the correctness of said entry as showing the true date of the boy's birth, and denied liability under the policy, and withdrew from the further defense of the suit; that thereupon the defense of said suit was assumed by said complainant; that complainant had no reason to suspect that the entry in said Bible was incorrect, until it developed on the trial, from the testimony, that the entry of the date was made at the same time that the dates of the births of the next two children were entered, which was several years (at least seven or eight, and probably nine) after the boy's birth; that this fact, in connection with the note on which the boy was employed, written at the instance of his father, and representing that he was 14 years of age, led the complainant to suspect, for the first time, the entry to be erroneous, and that it took immediate steps to ascertain at the place of his birth, which seems to have occurred in the state of Arkansas, the true and correct date thereof, for that purpose inserting a notice in a paper published at Mt. Ida, Ark.; that shortly after its motion for a new trial was overruled it received information from a rural community in Montgomery county, Ark., that the boy was in fact born September 26, 1896. Attached are the affidavits of several persons, who do not appear to have been related to the boy, and who states the date of his birth from recollection as connected with other events, all of which occurred some sixteen years ago. It is thus seen that there is in this bill no averment of fraud, bad faith, misconduct, or of any mis-

representation. The averments show no more than that the complainant rested satisfied as to the truthfulness of the testimony of the birth, as shown by the entry in the Bible, until the day of the trial. It shows no excuse for the failure of complainant to inquire at the place of the boy's birth, as to his age, during the pendency of the suit, but does show, on the other hand, that, soon after the recovery of this judgment, by the exercise of due diligence, other proof was had as to his age.

It can be no excuse that for a while complainant might have rested the defense with the agent of the insurance company. That was a matter with which this respondent was not concerned, and to which this court cannot look, for an excuse.

We think it clear without further comment that by this bill the complainant has failed to show that degree of diligence required by the authorities; but we are rather impressed by its averment that it was "stimulated by the verdict to a point of effort which it ought to have reached, but did not, before the trial."

Nor are we inclined to the opinion that the averments of this bill show any surprise, within the meaning of our decisions. But even if they did, it should have been made known to the court at the trial, with a request for the withdrawal of the case.—*B. P. McDuffie & Sons v. Weeks,* 9 Ala. App. 282, 63 South. 739; *McClendon v. McKissick,* 143 Ala. 188, 38 South. 1020.

Since the foregoing opinion was written, we have been furnished with a supplemental brief by additional counsel for appellant; and it is now insisted that the bill shows *fraud* sufficient to come within the above stated rule, the said fraud consisting in the use of the said Bible with the birth entries, in evidence.

We have just had occasion to review some of the authorities on this point, in the case of *John Hogan v.*

*John Scott,* 186 Ala. 310, 65 South. 209, and we need only state that a reference thereto will disclose that the bill here is wholly insufficient upon ground of fraud in procurement, or, as sometimes expressed, "in the concoction," of the judgment. For convenience we will note a few of the cases: *McDonald v. Pearson,* 114 Ala. 630, 21 South. 534; *Hardeman v. Donaghey,* 170 Ala. 362, 54 South. 172; *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Hanley v. Hanley,* 114 Cal. 690, 46 Pac. 736; *Dringer v. The Receiver, etc.,* 42 N. J. Eq. 573, 8 Atl. 811.

The chancellor properly sustained the demurrer to the bill, and his decree is here affirmed.

Affirmed. All the Justices concur.