# King, Adm'x, v. Henkie et al.

*Action for Damages by Administratrix Under Section 2*
*Code (1876).*

1. *When action lies generally; contributory neglige* The statute which gives an action for damages to the sentative of a deceased person, whose death was "caus ful act or omission of another," is limited to cases i ceased person himself, if death had not ensued, might

[King, Adm'x, v. Henkie et al.]

an action for the same act or omission (Code, § 2641); and since contributory negligence on the part of the deceased would have been a complete defense to an action by him, it is equally a defense to an action by his personal representative.

2. *Same ; retailer selling or giving liquor to intoxicated person, resulting in death.*—Although a retailer of spirituous liquors, who sells or gives liquor to an intoxicated person, known to him to be a person of intemperate habits is guilty of a misdemeanor, (Code, § 4205) ; yet he is not liable to a statutory action at the suit of the personal representative, though death ensued immediately after the liquor was drank, since the act of selling or giving the liquor is not the immediate cause of the death ; and if that act were within the purview of the statute, the contributory negligence of the decedent himself would be a defense to the action.

APPEAL from Colbert Circuit Court.

Tried before Hon. H. C. SPEAKE.

This action was brought in July, 1885, by Susan C. King, the widow and administratrix of James L. King, deceased, against Benjamin Henkie, William Wilson and Clarence Doss, the former of whom was the proprietor, the two latter being his clerks and employees, of a bar room, or drinking saloon in the city of Tuscumbia in said county. The complaint averred that on June 23, 1885, the plaintiff's intestate, the said James L. King, "was in the city of Tuscumbia in a state of intoxication, so much so as to be utterly incapable of taking care of himself, and in such helpless condition he walked or staggered into a saloon or grocery, on Commercial Row, in said city of Tuscumbia, in which house the defendants were engaged in selling and giving away spirituous liquors ; and, although they saw and knew that the plaintiff's intestate, when he came into said saloon or grocery on said day, was in a helpless state of intoxication ; and, although they knew he was a man of known intemperate habits, which was evidenced by his then condition, and although they knew he was the support of wife and children, yet the defendants wrongfully, and in violation of law, furnished, gave and sold to the plaintiff's intestate a large quantity of intoxicating liquors which he drank, and which caused the death of plaintiff's intestate before he left said saloon or grocery." The complaint was subsequently amended so as to make it appear that Henkie was "a licensed retailer of intoxicating liquors of all kinds, and the other defendants were his ?ents;" and to include the additional averment that said ?? on the day of his death, and before he went into defend- ?? n was "in a helpless state of intoxication, destitute of ??ason, his sense and reason being overthrown by the ??ting liquors, and his mental faculties thereby so ??e did not know what he was doing, and incapa- ?? what he did, and incapable of consenting to ?? in this condition of helplessness and mental

darkness, the defendants, then and there, knowing his mental condition, his want of mental power to consent to anything, or to know what he was doing, furnished him with intoxicating liquors, which he drank, and which caused the death of plaintiff's intestate before he left said saloon, and in less than an hour."

To the complaint, as amended, the defendants severally demurred; assigning, among others, as grounds of demurrer: (1). That said complaint contained no averment that plaintiff's decedent, the said King, could have maintained an action against the defendants for the acts or omissions complained of had the same failed to produce death. (2). That said complaint fails to aver any wrongful act or omission on the part of the defendants which caused the death of said King. (3). That said complaint showed ʌ its face that the alleged act of the defendants did not ˌ-oduce the injury complained of, but that plaintiff's intestate "produced it himself in this: that he drank a large quantity of intoxicating liquors which caused his death." (4). That said complaint showed on its face that the deceased contributed proximately to his own injury, and was guilty of contributory negligence by becoming intoxicated and "utterly incapable of taking care of himself," as therein averred.

The action of the court in sustaining the demurrer is here assigned as error.

J. B. MOORE and J. T. KIRK, for appellant, made the following points: (1). The contention of appellees that the plaintiff's intestate, if death had not ensued, could not have maintained an action for injuries sustained by reason of the act complained of, does not present the proper test as to appellant's right to maintain the present action. It is the character of the act, not the person by whom the suit can be maintained, that is the object of the statute.—*S. & N. R. R. v. Sullivan*, 59 Ala. 272; *Phila., Wilmington R. R. Co. v. The State*, 58 Md. (2). Appellant's intestate, in his drunken condition was, mentally, in the state of an infant or person *non compos*, and therefore incapable of consent or contributory negligence.—Sher. & Red. on Neg. § 26, n. 2; Wharton on Neg. 325; *M. & M. R. R. v. Blakeley*, 59 Ala. 471; *Tanner's Exr. v. L. & N. R. R.*, 60 Ala. 178; 18 N. Y. 248; 9 Por. 336; 3 Ohio 172; 27 Conn. 393; 50 Mo. 464; 53 Md. 542. (3). A case very similar to the present is *McCue v. Klein*, 60 Texas 168, 48 Am. Rep. 260, arising under the Texas statute which is much like our own. (4). The defendant, Henkie, was a licensed retailer, and his co-defendants were each his employees. Each violated the law in supplying the deceased, a man of known intemperate habits, with liquor.—128 Mass. 289; 36 Ala. 345. (5).

[King, Adm'x, v. Henkie et al.]

See, generally, the following authorities:—Wharton Neg. § 443; Sher. & Redf. §§ 484 and 485, note 2; 9 Nebraska 304; 50 Iowa 34; 26 Hu. N. Y. 608; 15 Neb. 150; 24 Kansas 147; 34 Ohio St. 399; 128 Mass. 289; 41 Mich. 475; 133 Mass. 86; 20 Kansas 109; 6 New York 376; 93 Mass. 514; 104 Mass. 64; 106 Mass. 143; 96 Mass. 290; Beach on Contributory Negligence, 204–391, 395–6–7.

WM. COOPER and JAMES JACKSON, *contra.*

SOMERVILLE, J.—The question raised for our decision, by the ruling of the court below on the demurrer to the complaint, is, whether, under the provisions of section 2641 of the present Code, 1876, authorizing an action to be brought for a wrongful act or omission causing the death of another, the personal representative of the deceased person can maintain an action against a retailer of intoxicating liquors, who sells or gives them to a man of known intemperate habits, who is helplessly drunk at the time, the drinking of which causes his death almost instantaneously.

1. The statute, under which the action is brought, provides that "when the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action against the latter at any time within two years thereafter, *if the former could have maintained an action against the latter* for the same act or omission, had it *failed to produce death*, and may recover such sum as the jury deem just." The remainder of the section, providing how the amount shall be distributed, and for the survival of the action against the personal representative of the wrongdoer, does not affect the question under consideration, and need not therefore be particularly referred to by us.—Code, 1876, § 2641.

The selling or giving away of spirituous, vinous, or malt liquors, in any quantities whatever, to persons of known intemperate habits except upon the requisition of a physician for medicinal purposes, is in this State made a misdemeanor, and a license to sell or retail affords no protection to the guilty party.—Code, 1876, § 4205.

The foregoing section of our Code (§ 2641), like many similar statutes in other American States, was evidently modelled after what is commonly known in England as Lord CAMPBELL's Act, 9 and 10 Vict. c. 93, enacted by the British Parliament in the year 1846. The language there used was that "whensoever the death of a person shall be caused by (any) wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in

[King, Adm'x, v. Henkie et al.]

respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

2. The purpose of this, and like legislation, was clearly to correct a defect of the common law, by a rule of which it was well settled, that a right of action based on a tort or injury to the person, died with the person injured. Under the maxim, " *Actio personalis moritur cum persona,*" the personal representative of a deceased person could maintain no action for loss or damage resulting from his death.—*Hallenbeck v. Berkshire, R. R. Co.,* 9 Cush. 480 ; *Quinn v. Moore,* 15 N. Y. 436. The reason for the rule was said by Baron Parke, in a case arising before him under the English statute, to be, that in the eye of the common law "the value of life was so great as to be incapable of being estimated by money." The rule probably, however, rests on a broader basis.

3. These statutes, it will be observed, each give a right of action only in cases where the deceased himself, if the injury had not resulted in his death, might have sustained a recovery. They continue, in other words, for the benefit of specific distributees "a right of action which, at the common law, would have terminated at the death, and enlarge its scope to embrace the injury resulting from the death." Cooley on Torts, 264.

4. The condition that the action must be one which could have been maintained by the deceased had it failed to produce death, or had not death ensued, has no reference to the nature of the loss or injury sustained, or the person entitled to recover, but to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action.—Saunders on Negligenc, 219 ; *South & North Ala. R. R. Co. v. Sullivan,* 59 Ala. 272, 281 ; As said in *Whitford v. The Panama R. R. Co.* 23 N. Y. 465, where a similar phrase in the New York statutes was construed, it "is inserted solely for the purpose of defining the kind and degrees of delinquency with which the defendant must be chargeable in order to subject him to the action."

5. It necessarily follows, and has been accordingly decided with great uniformity by the courts, that where the negligence of the person killed has contributed proximately to the fatal injury, no action can be maintained by his personal representative under this statute, because the deceased himself would not have been entitled to recover had the injury not proved fatal.—Cooley on Torts, 364; Saunders on Neg., 215 ; 1 Anderson on Torts (Wood's Ed.) p. 621, § 575 ; *Savannah & Memphis R. R. Co. v. Shearer,* 58 Ala. 672.

[King, Adm'x, v. Henkie et al.]

6. We first observe, that the cause made by the complaint does not seem to us to fall within the letter or spirit of the statute, and the court below so decided on the demurrer. The death of the deceased was not " caused " so much by the wrongful act of the defendants in selling him whiskey, as by his own act in drinking it after being sold to him. The only wrongful act imputed to the defendants was the selling, or giving, as the case may be, of intoxicating liquors to the deceased while he was in a stupidly drunken condition, knowing that he was a man of intemperate habits. It is not shown that the defendants used any duress, deception, or arts of persuasion to induce the drinking of the liquor. The act, however, as we have said, was a statutory misdemeanor. But this was only the remote, not the proximate or intermediate, cause of the death of plaintiff's intestate. The rule is fully settled to be that " if an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some *intervening cause,* from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote."—Cooley on Torts, 68–69 ; 1 Anderson on Torts, 12–13 ; §§ 10–11. The statute under consideration was not intended to annul, but rather to preserve this rule of the common law, so necessary to the certainty and justice of its administration, that there must be some proximate connection between the wrong done and the damage claimed to result from it, that the two must be sufficiently conjoined so as to be " concatenated as cause and effect," as often said. Had it not been for the drinking of the liquor, after the sale, which was a secondary or intervening cause co-operating to produce the fatal result, and was the act of deceased, not of defendants, the sale itself would have proved entirely harmless. Hence it can not be said that the wrongful act of the defendants, in making sale of the liquor, caused the death of King; but rather his own act in drinking it. And this must be true, whatever the condition of his mind, or state of his intellect, and without regard to the question of any contributory negligence on his part. The case, we repeat, is one not covered by the statute.

7. The plaintiff is, moreover, in our opinion, debarred from recovery by the contributory negligence of the deceased, even admitting that the wrongful act of the defendants caused the death of King. It is shown that the deceased was helplessly drunk when he purchased and drank the liquor, so much so as to render the exercise of ordinary care by him impracticable, if not impossible. The presumption is that this condition was brought about by his own voluntary or negligent act, by the

[King, Adm'x, v. Henkie et al.]

persuasion or coercion of another. If we admit that the State of mind thus produced was analogous to that of one *non compos*, or insane, so that the deceased was in mental darkness and so unconscious as to be at the moment incapable of knowledge or consent, thus rendering him morally unaccountable, yet the fact confronts us that this condition was the result of his own negligence or wantonness, and without it the accident of his death would not probably have occurred. The deceased, by the exercise of ordinary care, might have escaped making himself helplessly drunk. By not doing so he was the author of his own death, in view of the fact that it does not appear that the defendants, after the fatal draught was taken, could by the exercise of ordinary care, or even by any practicable means at hand, have avoided the consequences of death which almost instantly followed. This involved every element of contributory negligence, and was sufficient to prevent a recovery by the deceased, had death not ensued.—Railway Accident Law, (Patterson), 74; *Illinois Gen. R. R. Co. v. Cragen*, 71 Ill. 177; *Cramer v. Burlington*, 42 Iowa, 315; Whart. on Neg. § 332.

8. We have thus hypothetically admitted the contention of appellant's counsel that one drunk to unconsciousness is to be placed upon the same ground as infants of tender years, persons *non compos*, or insane, so far as concerns the question of plaintiff's contributory negligence. The contrary of this, however, would seem to be true, as the basis of the rule governing the latter classes is that of moral accountability. Imbeciles, lunatics, and infants are not accountable morally for the state of their minds, and yet the law governing the subject of contributory negligence, even as applicable to them, is admitted to be in a very unsatisfactory and doubtful state. Cooley on Torts, 680, 682. A drunkard, or one in a state of voluntary intoxication, can scarely claim so much charity from the law in this particular as imbeciles and lunatics, because he has by his own agency, either wantonly or negligently, brought about his own misfortune. As drunkenness is no excuse for crimes, or for torts, no more should it be a basis for the liability of another in an action brought against him by the victim of such inebriety.

9. The case of *McCue v. Klein*, (60 Tex. 168), s. c. 48 Amer. 260, referred to by appellant's counsel as an authority to support the present action, although analogous to it in some respects, is broadly distinguishable from it in one important particular. There the death of the deceased was brought about by the defendants' conspiring together to *induce* and *persuade* the deceased to swallow a large amount of whiskey, he being already so drunk as to be deprived of

[Katzenburg v. Lehman.]

his reason and to be rendered incapable of resistance, the draught being thus imposed upon him in his helpless condition. The case was made to rest on the ground that the administration of the deadly draught, like that of a noxious drug, was an assault, the deception by which it was accomplished being a fraud on the party's will, equivalent to force in overpowering it.—*Com. v. Stratton,* (114 Mass. 303) 19 Amer. Rep. 330.

The demurrer to the complaint was, for the foregoing reasons, properly sustained, and the judgment of the Circuit Court must be affirmed.