# DeSoto Coal M. & Dev. Co. *v.* Hill.

## *Injury to Servant in Mine.*

(Decided November 12, 1912.   Rehearing denied December 17, 1912.
60 South. 583.)

1. *Master and Servant; Mines; Regulation; Age and Sex Limitation; Statute.*—Section 1035, Code of 1907, should be liberally construed so as to effectuate the humane intent of the legislature.

2. *Same; Child Unlawfully Employed; Liability of Master.*—Where a mining company employes a boy under fourteen years of age in violation of section 1035, Code of 1907, it is liable for injuries resulting to him from the employment, and incident to any of the risks of the master's business, though not the proximate result of any act or omission on the part of the boy in discharge of the duties assigned him, and though he or his parents may have misstated his age and led the master to believe that he was above the prohibited age; the effect of the statute being that the mining company is an insurer of the age of the boy when it employs him.

3. *Same; Contributory Negligence.*—A boy employed in violation of section 1035, Code of 1907, cannot be charged with contributory negligence in respect to any injury received in the mine.

4. *Same; Complaint.*—Where the action was for injuries to a boy under fourteen years of age employed in a mine in violation of section 1035, Code of 1907, a complaint alleging a wrongful employment and stating that the plaintiff was a minor thirteen years of age at the time of the bringing of the suit was sufficient although it did not charge negligence or expressly state his age when injured.

5. *Appeal and Error; Harmless Error; Instruction.*—Where the action was for injury to a boy employed in the mine in violation of section 1035, Code of 1907, the plaintiff could not have been chargeable with contributory negligence, and hence a charge erroneously stating the rule as to contributory negligence was not prejudicial to the defendant; neither was a charge prejudicial which erroneously stated the amount of proof required to show contributory negligence.

6. *Charge of Court; Applicability to Evidence.*—Where the undisputed evidence showed that plaintiff was injured by falling from a car or while alighting from a car it was not error to refuse the instruction that the burden was on the plaintiff to prove that he fell from the car.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Jim Hill, by next friend, against the De Soto Coal, Mining & Development Company for dam-

ages for injuries received. From judgment for plaintiff, defendant appeals. Affirmed.

The following is the complaint: Count 1: "The plaintiff, Jim Hill, who is a minor, who is of the age of 13 years, and who sues by W. J. Hill, as his next friend, claims of defendant the sum of $40,000 as damages, for that heretofore, to wit, the defendant was engaged in and about the business of operating a coal mine, known as Indio mine, in Jefferson county, Alabama, with shafts, entries, and rooms therein, and with mine tracks and cars operated thereon; that on that date plaintiff was employed by the defendant in said mine as a trapper, and while engaged in and about his duties in said mine plaintiff was caused to fall or be thrown from a mining car in said mine, whereby he was greatly injured and bruised [here follows catalogue of injuries], and to be crippled for life and rendered permanently less able to follow his usual avocation and employment. And plaintiff avers that he received his said injuries as a proximate consequence of the wrongful conduct of the defendant's officers and agents, whose names are unknown to plaintiff, while engaged in the line and scope of their employment, which said wrongful conduct consisted in this: That said officers and agents of defendant, while engaged in the line and scope of their employment, did wrongfully employ the plaintiff, then a boy 13 years of age, to work or labor in or about the defendant's mine in violation of section 1035, Code 1907. [Here follows the said section.]" Count 6: Same as 1, down to and including the words "avocation and employment," where they occur together in said count, and adds: "And plaintiff says that he received his said injuries as a proximate consequence of his wrongful employment by one P. H. Savage, then defendant's superintendent, who was acting in the line

and scope of his authority, in violation of section 1035 [and then sets out said section.]" Count 7: Same as 6, except that it has the additional allegation that the plaintiff was then a boy only 13 years of age. Count 8: Same as 1, down to and including the words "avocation and employment," where they therein occur, and adds: "And plaintiff says that he received his said injuries as a proximate consequence of the negligent conduct of the defendant's officer and agent, one P. H. Savage, while the said Savage was engaged in the scope of his employment by the defendant, which said negligence consisted in this: That the said P. H. Savage, while engaged in the line and scope of his employment by the defendant, did negligently employ the plaintiff, then a boy of 13 years of age, to work and labor in and about the defendant's mine, in violation of section 1035, of the Code of Alabama of 1907 [and the section is then set out]."

The demurrers to the first count are the usual demurrers as to vagueness, indefiniteness, and uncertainty, as to violation of duty, and further, that it does not appear that defendant owed any duty to the plaintiff which it negligently failed to perform, and that the averments set up do not show any liability on the part of the defendant, and because the counts fail to state any act of negligence which would render the defendant liable, and because the section mentioned does not authorize the plaintiff to maintain the suit under the facts set out, and it does not appear that the defendant unlawfully employed the plaintiff at the time he was injured. The pleas were that plaintiff himself was guilty of contributory negligence, and that the plaintiff represented himself, at the time he applied for employment, to be over 14 years of age, and that he did this in order to get employment, and that, acting on this infor-

mation, which he believed to be true, defendant employed plaintiff to work in its mine.

The exceptions to the court's oral charge are as follows: (1) "If you are reasonably satisfied of that fact [that plaintiff was under 14 years of age at the time he was injured], then the plaintiff would be entitled to recover in this case such damages as he may have sufferer by reason of the alleged wrongful employment or alleged negligent employment." (2) "Now, in other words, a boy—or the plaintiff, for that matter—could be guilty of contributory negligence if he possesses a degree of special intelligence greater than that of boys of the same age. However, there would have to be some distinct characteristics of intelligence, brightness, or smartness that would distinguish him from boys of the same age."

The following charges were given at the instance of the plaintiff: (5) "I charge you, gentlemen of the jury, that if you believe from the evidence in this case that plaintiff was unlawfully employed by the defendant in violation of section 1035 of the Code of Alabama, you have the right to find for the plaintiff, unless you believe defendant has established one or more of its pleas of contributory negligence." (13) "I charge you, gentlemen of the jury, that in considering the evidence in this case, in connection with defendant's pleas of contributory negligence, you are bound to take into account the age, judgment, surroundings, degree of intelligence, and other characteristics of boys of defendant's age, in determining whether or not plaintiff was guilty of contributory negligence."

The following charges were refused to the defendant: (1) The affirmative charge, and affirmative charges as to each count. (21) "I charge you that the burden of proof is on the plaintiff to reasonably satisfy

you from the evidence that the fall of the plaintiff from the car, or when he started to get off the car, proximately caused his injury, in order to entitle him to recover."

J. T. STOKELY and R. H. SCRIVNER, for appellant. The case involves a construction of section 1035, Code of 1907, and the questions presented are presented by the charge of the court to which exceptions were reserved. One of the questions presented is whether the mere employment of plaintiff to work in the mines renders the employer absolutely liable to him for injuries sustained while at work therein. Our contention is that the employer would not be liable if he exercised due care to ascertain plaintiff's age and entertained an honest belief after such inquiry that his employment was lawful. It is a fundamental proposition that there can be no liability where there is no wrong or negligence.—*Koester v. Rochester Candy Works*, 87 N. E. 77; 160 N. Y. Supp. 442; 12 N. Y. Supp. 188; *Allen v. State*, 55 Ala. 16, *Wolff v. Smith*, 42 South. 824; *Frieberg v. State*, 94 Ala. 91; *Long v. Holley*, 58 South. 255. There is another question in the case, and that is whether the employment of the plaintiff even if in violation of the statute, was the proximate cause of his injury. The violation of a statute does not of itself give a right of action and it must appear in this case that the plaintiff was injured as a proximate cause of such violation in order for him to recover.—*Jones v. Union Foundry Co.*, 55 South. 153; 19 N. W. 744; 69 N. W. 245, and authorities supra. See, also, 73 N. W. 253, and authorities cited.—87 N. E. 711. It is insisted that it affirmatively appears from the evidence that the proximate cause of plaintiff's injuries was not his employment but the fact that he slipped and fell from

[DeSoto Coal M. & Dev. Co. v. Hill.]

the car.—54 Atl. 278; 51 N. E. 1; 21 L. R. A. 704.
So far as defendant was concerned plaintiff's injuries
resulted from an accident that could not reasonably
be foreseen, anticipated or prevented by it.—100 U. S.
213; 48 Fed. 820; 6 N. W. 812; 4 South. 333. Un-
less plaintiff was injured owing to his youth and in-
experience it cannot be said with a reasonable con-
construction that the violation of the statute was the
proximate cause of the injury.—*S. L. & S. F. Ry. Co.
v. Brantley,* 53 South. 305; 31 Ontario, 10; 81 Kansas,
585; 47 N. W. 1037. The counts of the complaint
were subject to the demurrers interposed.—Authorities
supra, and *Ga. Pac. v. Probst,* 4 South. 711; *Harris
v. McNamara,* 12 South. 103; *B. & E. R. R. Co. v. Mat-
tison,* 52 South. 49. Counsel discuss the charges
given for the plaintiff and refused to the defendant and
insist that there was error and in support thereof cite
the authorities above cited. On rehearing counsel in-
sist that it was immaterial whether plaintiff was guilty
of contributory negligence or not, since issues are join-
ed on that plea and the proof sustained the plea.—*L.
& N. R. R. Co. v. Mason,* 58 South. 952; *Holloway v.
Southern B. & L. Ass'n,* 136 Ala. 160 and authorities
there cited.

VASSAR L. ALLEN, for appellee. The proper con-
struction of the statute is that miners in Alabama are
absolutely prohibited from employing in the mines of
the state any of the persons prohibited by section 1035,
Code of 1907, and that if there is such a violation, re-
gardless of the precaution used to ascertain whether
the employee is in the prohibited class, and injury
follows the employer becomes absolutely liable.—1
Thompson on Neg., Sec. 10 9 L. R. A. (N. S.) 349;
30 L. R. A. 83; 214 Ill. 509; 7 L. R. A. 335; 17 L. R. A.

(N. S.) 606. The boy could not be guilty of contributory negligence.—20 L. R. A. (N. S.) 976; 12 L. R. A. (N. S.) 469; 93 N. Y. Supp. 560. The fact that the minor and his parents falsely stated the minor's age will not excuse the company nor estop him from bringing an action for injuries received there.—81 Pac. 869; 20 L. R. A. (N. S.) 500; 96 S. W. 679; 220 Pa. 617; 218 Pa. 311; 222 Pa. 40. On these authorties it is insisted that the lower court properly construed the section and that no error was committed in the giving or refusing of charges for plaintiff or defendant.

ANDERSON, J.—Section 1035 of the Code of 1907 says: "No woman or boy under the age of fourteen years, shall be employed to work or labor in or about any mine in this state." This statute was intended to protect women and children of a tender age from incurring the hazard and danger incident to the operation of mines by imperatively preventing the employment of same, and requires the employer to see and know that those whom they employ are not within the prohibited class, and it should be liberally construed so as to effectuate the humane intent of the Legislature. As was said by the New York court, in the case of *Lee v. Sterling Mfg. Co.,* 47 Misc. Rep. 182, 93 N. Y. Supp. 560: "This is a statute which makes an epoch in the progress of humanity, and the courts should not get in its way or whittle it down, as courts have done in the past." It is not a question of whether or not the employer thought the child was over the prohibited age, but whether or not he was. Nor is it necessary that injury must result as the proximate cause of some act or omission of the minor in the discharge of the duty assigned him, but the right of action arises if the injury resulted from the employment and was incident

to any of the risks or dangers in and about the business. Of course, there would be no causal connection if the boy got sick or was injured in some way foreign to the master's work or business, although in or near the mine; but if the injuries are produced while the boy is at the forbidden place—that is, in or about a mine by some cause not foreign to the master's mine or business—there is such a causal connection with the forbidden employment as would render the master liable. The weight of authority also is that false representations by the minor or any one else, as to his age, would not estop him from a recovery for injuries sustained. Neither can the defense of assumption of risk or contributory negligence be invoked by the master as a defense to injuries sustained as a result of the wrongful employment. This statute was evidently borrowed from some of the other states and was enacted after it had there received a well-known interpretation, and we find that the holding in nearly all of the states, wherein statutes similar to this one exists, and which have been interpreted, is in full accord with the foregoing conclusion.—Thompson on Negligence, vol. 1, par. 10; *Queen v. Dayton Coal Co.*, 95 Tenn. 458, 32 S. W. 460, 30 L. R. A. 83, 49 Am. St. Rep. 935; *American Car Co. v. Armentraut,* 214 Ill. 509, 73 N. E. 766; *Rolin v. Reynolds Tobacco Co.*, 141 N. C. 300, 53 S. E. 891, 7 L. R. A. (N. S.) 335, 8 Ann. Cas. 638; *Starnes v. Albion Mfg. Co.*, 147 N. C. 556, 61 S. E. 525, 17 L. R. A. (N. S.) 606, 15 Ann. Cas. 470; *Swift Co. v. Rennard,* 119 Ill. App. 173; *Strafford v. Republic Co.*, 238 Ill. 371, 87 N. E. 358, 20 L. R. A. (N. S.) 876, 128 Am. St. Rep. 129; *Braasch v. Michigan Stove Co.*, 153 Mich. 652, 118 N. W. 366, 20 L. R. A. (N. S.) 500; *Nairn v. National Biscuit Co.*, 120 Mo. App. 144, 96 S. W. 679; *Stehle v. Jeager Co.*, 220 Pa. 617, 69 Atl. 1116, 14 Ann.

Cas 122; *Lenahan v. Pittston Coal Co.*, 218 Pa. 311, 67 Atl. 642, 12 L. R. A. (N. S.) 461, 120 Am. St. Rep. 885; *Sullivan v. Hanover Co.* 222 Pa. 40, 70 Atl. 909. We do not mean to hold that a representation by the parent that the boy was over age would not estop said parent in an action for violating the statute, but do hold that the boy is not estopped from a recovery, either by his own misrepresentations or those of his parents, as to his age. These representations, either by the boy or the parent, are evidential facts to be considered in determining the true age of the boy, but not as an estoppel in an action by the boy or his legal representative as distinguished from one by the parent. The first part of the oral charge excepted to by the appellant conforms to the foregoing opinion and was not error, as it hypothesizes that the injuries must have been sustained by reason of the alleged unlawful employment.

The New York court, while in line with other authorities that assumption of risk and contributory negligence is not available against a violation of this statute, holds, in effect, that the employer is not liable unless he violates the statute knowingly or negligently, but we follow the other cases which make him liable for violating it, whether done negligently or not. In other words, he must, in effect, be an insurer of the boy's age when he employs him.—*American Co. v. Armentraut*, 214 Ill. 509, 73 N. E. 766; *Swift v. Rennard, supra; Inland Steel Co. v. Yedinak*, 172 Ind. 423, 87 N. E. 229, 139 Am. St. Rep. 389. The statute in question must not be confused with the "child labor" law regulating the employment of children in a mill, factory, or manufacturing establishment, and which is contained in chapter 184 of the Criminal Code of 1907, as there is a provision there for requiring the

affidavit of the parent and also penalizing a violation knowingly. The statute in hand has no such provision or conditions, but peremptorily prohibits the employment of a woman or boy under 14 years of age from being employed in or about a mine. The Alabama cases cited by appellant, to the effect that the defendant would not be guilty for violating the law for selling liquor to minors or persons of known intemperate habits, are not analogous to the present case, as the court there held that the intent was essential to the crime. Here we are not dealing with a criminal statute, but one which prohibits the employment of a certain class, and the employer must ascertain at his peril whether the child is of the required age. The case of *Wolf v. Smith*, 149 Ala. 457, 42 South. 824, 9 L. R. A. (N. S.) 338, is not opposed to the present holding and involved a different statute.

There was no reversible error in the second part of the oral charge excepted to by the defendant. Whether the court did or did not correctly state the rule as to the contributory negligence of infants under 14 years of age, generally speaking, error, if any, could be of no avail in the instant case as the court could, as matter of law, have instructed that the plaintiff was not and could not be guilty of contributory negligence.— *Lenahan v. Pittston*, 218 Pa. 311, 67 Atl. 642, 12 L. R. A. (N. S.) 461, 120 Am. St. Rep. 885, and authorities supra. The case of *Inland Steel Co. v. Yedinak*, 172 Ind. 423, 87 N. E. 229, 139 Am. St. Rep. 389, presents a well-considered opinion by the Indiana court, wherein many authorities are cited in support of the holding that: "The employer of a child in violation of a specific statute cannot screen itself from liability for an injury sustained by the child in its service because the injury was occasioned through such negli-

gence, imprudence, or childish traits as gave rise to the statute. It follows, therefore, that if appellee was employed and injured, as alleged in the second paragraph of complaint, under the law he cannot be chargeable either with having assumed any risks of employment or with negligence contributing to his injury." It may be true that the defendant had pleas of contributory negligence and to which demurrers should have been sustained, but, notwithstanding issue was joined on said pleas, they were not proven and could have been affirmatively charged out. They all charge that the plaintiff was "guilty" of contributory negligence, when, as matter of law, he was not and could not be "guilty" of contributory negligence as charged in said pleas.—*Rasco v. Jefferson*, 142 Ala. 705, 38 South. 246; *Nashville R. R. Co. v. Hill*, 146 Ala. 240, 40 South. 612. Nor could there be any injury in charge 13, given at plaintiff's request, or any other charges given or refused which relate to contributory negligence.

There was no reversible error in giving plaintiff's written charge 5. It was abstractly correct without the exception, and, as the exception related to contributory negligence, the fact that it may have required the absolute establishment instead of the "reasonable" establishment of the pleas of contributory negligence was error without injury, as there was no contributory negligence, and the court could have charged out said pleas. The trial court did not err in refusing the general charge as to the whole complaint or as to any of the counts which went to the jury. Each of the counts (1, 6, 7, and 8) are for a wrongful, not negligent, employment of the plaintiff in violation of section 1035 of the Code, and there was proof that the boy was under 14 years of age both at the time of employment and

the injury, and that the injury resulted from the wrongful employment.

The refusal of the defendant's charge 21, if error, was without injury, as the undisputed evidence shows that the plaintiff was injured by a fall either from the car or while alighting from same.

There was no error in overruling the demurrers to counts 1, 6, 7, and 8, as amended. They set up a wrongful employment, and did not have to charge negligence. They also plainly and clearly show that the plaintiff was not only under 14 years of age when employed, but was under said age when injured. The counts aver that the plaintiff was a minor 13 years of age; that is, that he was 13 years of age at the bringing of the suit. If the complaint avers that he was 13 years of age when the suit was brought, he must have been under 14 when injured, as the injury is set out as having been inflicted prior to the bringing of the suit.

There was no error in refusing the motion for a new trial. The judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON, MCCLELLAN, SOMERVILLE, and DE GRAFFENRIED, JJ., concur.

MAYFIELD, J.— (dissenting.)—It is decided in this case that if a boy 13 years of age, and his parents, together, by misrepresenting his age, thereby induce a coal mine operator to employ the boy, and the boy while so engaged in that business, is injured in consequence of his own negligence or wrong, the coal mine operator is liable to the boy in damages for his self-inflicted injuries, and for no other reason than that the operator allowed himself to be deceived and thus defrauded, by the deceitful and fraudulent representations of the

minor and his parents, that he was 14 years of age, when in fact he was only 13. The majority opinion in this case holds that such is the meaning and effect of section 1035 of the Code, which is set out in full in the opinion. If such is the true meaning and effect of the section, the title or catch lines of the sections should be changed so as to indicate the true meaning, and should read as follows: "To enable boys and their parents to defraud and bankrupt coal mine operators."

If the decision of the majority is correct in this case, then, if the self-inflicted injuries of the boy had resulted in his death, his administrator, for the benefit of his parents, would recover damages of the operator, who was so deceived by the boy and his parents by misrepresentations as to a fact which was peculiarly, if not exclusively, within their knowledge. This necessarily follows, because the statute says in terms that the administrator may recover in all cases in which the injured person could have recovered had death not resulted, which statute, in connection with those of descent and distribution, makes the parents the distributees in such cases.

The writer feels impelled to say that he did not so read or interpret the statute when he twice assisted in the codification of the statute of which this section forms a part, or he would have placed the appropriate headlines to this section 1035 of the Code, instead of those now appearing, and which also appeared in the Code of 1896. I also feel impelled, in justification of my Brothers, as to their construction of this statute, to say that I am surprised that they have found and cited some decisions which seem to support their conclusion. Yet I feel perfectly safe in saying that both in number and in weight the authorities are against them in their construction of this statute. It seems

that the decisions of the Illinois court support the decision in this case fully, and that the decisions of the Indiana court do likewise, to some extent, but not in toto. The Indiana decisions may be distinguishable from those of Illinois and from this for the reason that the statutes of that state were materially different from the statute of this state under consideration, and the master may have been at fault, and it is not certain that he is there held to be an absolute insurer of the child's safety. The child in the Indiana case, cited in the opinion, was not only under the age limit prescribed by the statute, but was also engaged in performing duties specifically prohibited by the statute, and with the knowledge and acquiescence of the master, and the injury was in consequence of the negligence of the child due to childish traits, of imprudence, within the protection of the statute, though I am free to confess that I think the Indiana cases cited in the majority opinion go too far in fixing absolute liability on the master. In the Indiana case it was both alleged and proven that the child was not only wrongfully employed, because under the age limit fixed by the statute, but was also "carelessly and negligently continued in said employment until he was injured," and that he was "required to work at night for 12 hours each day for six days in each week, and that for more than a week prior to the time of receiving his injuries he had been compelled to and did work under his employment 14 hours each day," and that on account of physical exhaustion was caused to fall asleep, and that while so asleep the master caused a car to be rolled across plaintiff's foot.

These specified acts as to the number of hours in which servants should be employed in one week were expressly prohibited, and the statute was knowingly

violated by the employer. If the allegations and the facts in that case had been as they are in this case, the decision would no doubt have been different. In this case, as to the counts of which I am speaking, it is shown that the master was guilty of no wrong or negligence in fact. He attempted to obey the statute both in letter and in spirit. He inquired as to the age of the minor, refused to employ him if he was under 14 years of age, and was informed by the boy, by his stepmother (his mother being dead), and by his father that he was 14 years of age. There was nothing to show or indicate the contrary; he did not voluntarily desire or seek to employ the boy, but did so only at the repeated and earnest request of the boy, his friends, and his parents, the only persons presumed to know his age; and, after being thus assured that he was not violating the statute, he yielded to the solicitations of those who now profit by the fact, and the fact alone, that the master suffered himself to be deceived by them. I do not believe this is now, ever was, or ever ought to be, the law of this state.

As before stated, the Illinois court seems to be the only court that has gone to the full length to which the decision in this state has gone. I am not sure of this, but from my limited examination of the question this is the result. That the rule of construction as to similar statutes, as for the sale of intoxicating liquors to minors and inebriates, the rule in Illinois is shown to be different from that in this state in the particular respect as to which I complain. This is in terms pointed out in the Illinois decision cited and relied upon in the majority opinion. It is there said: "The dramshop act forbids the sale of intoxicating liquors to minors. This court has held, under that statute, that it is immaterial whether the dramshop keeper knew the purcha-

ser to be a minor, and that it is no answer to say that the seller may be imposed upon and made to suffer the penalties of the law when he had no intention to violate its provisions.—*McCutcheon v. People,* 69 Ill. 601. The reasoning which led to that conclusion obtains here." I concede, of course, that a given act or deed, if wrongful, whether so at common law or made so only by statute, may impose civil liability, though no penalty is prescribed, and it is not a crime. I also concede that an intent to commit a crime is usually, if not always, of the essence of the crime, and that intent is not so nearly universally a necessary element of civil liability; but a scienter or negligence in failing to have the scienter of doing a wrongful act, whether wrongful at common law or made so by statute, is necessary to make the doing of the given act wrongful, and to impose liability as for a tort. This doctrine is announced in many decisions of this court.

It is said in *Duncan v. State,* 7 Humph. (Tenn.) 150: "It is a sacred principle of criminal jurisprudence that the intention to commit the crime is of the essence of the crime, and to hold that a man shall be held criminally responsible for an offense, of the commission of which he was ignorant at the time, would be intolerably tyranny. It is right and proper that the commander of a steamboat, who receives and carries off the slave of another, should be severely punished. But to hold that he shall be so punished, when the boat has received him and carried him off without his knowledge or consent, would be shocking to common sense. The statute does not punish for the mere act of carrying off, but punishes for the receiving and carrying off. This makes the punishment consistent with justice, for the word 'receiving' necessarily implies an act knowingly done, for no man can receive without his knowledge

and consent. A man receives a bribe; placing money in his pocket, without his knowledge, is not such a reception."

BRICKELL, C. J., in this case of *Gordon v. State,* 52 Ala. 308, 309, 310 (23 Am. Rep. 575), wherein he cites the Tennessee case above quoted from, said: "Ignorance of law is never an excuse, whether a party is charged civilly or criminally. Ignorance of fact may often be received to absolve a party from civil or criminal responsibility. On the presumption that every one capable of acting for himself knows the law, courts are compelled to proceed. The precise time when a man arrives at the age of 21 years is a fact, knowledge of what he derives necessarily from his parents or other relatives or acquaintances having knowledge of the time of his birth. If acting in good faith, on information fairly obtained from them under an honest belief that he had reached the age, he votes, having the other necessary qualifications, illegal voting should not be imputed to him."

We have statutes prohibiting the gift or sale of intoxicating liquors to minors and also to inebriates except upon certain conditions, but it has always been held that knowledge of the minority or the inebriety, or negligence in not ascertaining the fact, was a necessary element of the offense declared or denounced by the statute. In *Tatum's Case,* 63 Ala. 151, Stone, J., said: "Three essential facts must have been established to the satisfaction of the jury, beyond a reasonable doubt, to authorize a conviction: First, that there was a sale or gift of spirituous, vinous, or malt liquor; second, that the sale or gift was to a person of intemperate habits; third, that at the time the seller or giver knew the person to whom he furnished the liquor was of intemperate habits."

The majority opinion in the case under considera-
tion attempts to distinguish the case at bar from the
cases involving the liquor statutes, above referred to,
on the ground that an intent is a necessary element of
the crime denounced, and that the intent cannot exist
without knowledge or scienter of facts which consti-
tute the crime. I insist the master does not violate the
statute under consideration, unless he knows, or is
chargeable with notice of, the fact that the boy is un-
der 14 years of age. No specific intent to violate the
criminal statute. is required to support a conviction;
but an intent to commit the act prohibited is required,
and that is all that is required, and that much must be
required to fix civil liability for doing an act which
is legally wrong, whether it be wrong by virtue of the
common law, or because prohibited by the statute, un-
less the statute expressly otherwise provides. BRICK-
ELL, C. J., makes the question of intent exceedingly
plain in the case of *Bain v. State,* 61 Ala. 75, 80, and
shows that it is nothing different from the intention to
do the wrongful act, and that it is the same whether
the liability be criminal or civil. He says: "When-
ever one does an act in itself legally wrong, the law
presumes the intent to do that act, and the act of itself
is evidence of the illegal intent." But the same learned
justice has said that ignorance of the law never ex-
cuses one from civil or criminal liability, but ignorance
of the facts will excuse one from both.—*Gordon v.
State,* 52 Ala. 309, 310, 23 Am. Rep. 575. Surely a
statute is not relieved of severity or strictness because
a penalty is imposed for its violation or because its
violation is denounced as a crime. Can it be said that
these liquor statutes would be more strict or exacting
if they carried no penalty, and their violation was not
a crime, but the prohibited acts were merely condemn-

ed without more? Surely section 1035 of the Code is
not more strict or binding because no penalty is impos-
ed and its violation is not made a crime. The truth is
the section in question is partly declaratory of the com-
mon law, and is merely a police regulation, fixing a sex
and age limit as to who shall be employed in coal
mines.

Why a plain, simple, statutory regulation like this
must be so construed as to make a man civilly liable
for an injury which he did not proximately cause and
did not know that he indirectly caused, and one which
he could not, with all proper caution, have prevented,
I am unable to understand. A law which will make a
citizen liable for an injury or death which he did not
cause and could not have prevented is intolerable and
wicked, and the mere fact that it will chiefly hurt cor-
porations is no just excuse for its existence or contin-
uance.

It is an ancient, wise, and righteous maxim of the
law that no one shall take advantage of, or profit by,
his own wrong. The record in this case conclusively
shows that the only persons who have committed any
wrong—the plaintiff and his parents—will profit by
their wrong, and that at the expense of the person who
was so wronged by them. A decision or construction
of a statute which produces such results must be
wrong. Another ancient, sound, and sacred maxim of
the law is, "So use your own property as not to injure
that of your neighbor"; but this does not mean that if
your neighbor, by fraud or deceit practiced upon you,
uses your property and therewith injures himself by his
own wrong, you must be mulcted in damages to com-
pensate him for his self-inflicted injuries. Yet it seems
to me that, by the construction placed upon the statute
in question, the opposite meaning is made to appear;

and, if this is so, it is certainly a wrong construction. I cannot agree that the violation of this statute was the proximate cause of the injury. It may be said to be the indirect, but not the direct, cause. It is possible that it was the causa sine qua non of his injury, but it was not the causa causans thereof, which is necessary to support an action for the violation of a public ordinance or statute. It is nothing like as strong a case to show that the violation of the statute was the proximate cause of the injury, as was *Mutch's Case,* 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep.. 179, or *King v. Henkie,* 80 Ala. 505, 60 Am. Rep. 119.

In *Mutch's Case* the railroad company was knowingly violating an ordinance of Opelika regulating the speed of its trains, and a boy $9\frac{1}{2}$ years old attempted to grasp and climb a ladder attached to one of the cars of the passing train and was injured. The jury, as in this case, returned a verdict against the corporation for violating the law. The trial court refused to set the verdict aside, and the railroad company appealed to this court, and this court, notwithstanding the finding of the jury and the action of the trial court in refusing to disturb it, set the verdict aside on the sole ground that the conscious violation of the ordinance in running the train at an excessive rate of speed was not the proximate cause of the injury. This was one of the great opinions of that great Chief Justice, Stone, and therein he used language which ought to be remembered by this court when called upon to set aside unrighteous verdicts and judgments against corporations. In that opinion, among many other truths, he said: "We hold, as matter of law, that there was no proof whatever in this case tending to show a causal connection between the negligence charged and the injury suffered. In the jury box, and under the oath, the

jurors have solemnly sworn on the holy Evangelists of Almighty God there is no room for friendship, partiality, or prejudice, no permissible discrimination between friends and enemies, between the rich and the poor, between corporations and natural persons. The ancients painted the goddess of justice as blindfolded, and jurors must be blind to the personal consequences. of the verdicts they render. If the testimony convinces their judgments of the existence of certain facts, they must be blind to the consequences which result from those facts. A wish that it were otherwise furnishes no excuse for deciding against their convictions. Justice thus administered commands the approbation of heaven and earth alike, and a verdict thus rendered meets all the requirements of the juror's oath, in the fullest sense of the word—a true expression of the convictions fixed on the minds of the jury by the testimony. Independent of the legal question considered above, and which we have declared to be determinative of this case, the verdict of the jury was so palpably against the evidence that a new trial ought to have been granted on that account."

In the case of *King v. Henkie*, 80 Ala. 505, 60 Am. Rep. 119, the defendants were sued civilly for knowingly violating a statute in giving intoxicating liquor to an inebriate. It was alleged in the complaint that one King, plaintiff's intestate, was "in a helpless state of intoxication, destitute of sense and reason, his sense and reason being overthrown by the use of intoxicating liquors, and his mental faculties thereby so impaired that he did not know what he was doing, and incapable of knowing what he did, and incapable of consenting to anything; and in this condition of helplessness and mental darkness the defendants, then and there knowing his mental condition, his want of mental power to

consent to anything, or to know what he was doing, furnished him with intoxicating liquors, which he drank, and which caused the death of plaintiff's intestate before he left said saloon, in less than an hour." In that case the court held that the complaint showed that the injury was not the proximate result of the violation of the statute, but was only the remote one. The court in that case, speaking through Somerville, J., said (80 Ala. 510, 60 Am. Rep. 119) : "The only wrongful act imputed to the defendants was the selling or giving, as the case may be, of intoxicating liquors to the deceased while he was in a stupidly drunken condition, knowing that he was a man of intemperate habits. It is not shown that the defendants used any duress, deception, or arts of persuasion to induce the drinking of the liquor. The act, however, as we have said, was a statutory misdemeanor. But this was only the remote, not the proximate or intermediate, cause of the death of the plaintiff's intestate. The rule is fully settled to be that 'if an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause and refuse to trace it to that which was more remote.'—Cooley on Torts, 68, 69; 1 Anderson on Torts, 12, 13, §§ 10, 11. The statute under consideration was not intended to annul, but rather to preserve, this rule of the common law, so necessary to the certainty and justice of its administration, that there must be some proximate connection between the wrong done and the damage claimed to result from it that the two must be sufficiently conjoined so as to be 'concatented as cause and effect.' "

I must say, however, that I have always thought that the court was wrong in its conclusion reached in *King's Case, supra.* If the averments of that complaint were true, and on demurrer they should have been so treated, the death of King was the result, both proximately and solely, of a violation of the statute. It was alleged that King, to the knowledge of the defendants, had no mind and could not consent or contribute to his injury. The fact that he had previously gotten drunk was the remote, and not the proximate, cause. The point I am trying to make is that, if the above case is right, the one under consideration must be wrong. The correct rule, however, in such cases of employing minors in violation of statutes is, I think, that stated in the text-books on the subject, and adhered to by the courts of New York, Louisiana, West Virginia, and the great majority of the courts to be found in notes to these texts, and in notes to 31 L. R. A. (N. S.) 504; 7 L. R. A. (N. S.) 335; 20 L. R. A. (N. S.) 876. It will be found that no text-writer or annotator on this subject supports the majority opinion in this case as to the points of which I complain, and that only the courts of Illinois, and possibly those of Indiana and Pennsylvania, support the decision in this case. If the Indiana and Pennsylvania cases support it, they do so only through dicta; the cases reported did not call for nor authorize such a decision.

Two well and fully considered cases, on very similar lines, which hold contrary to the decision in this case, are those of *Norman v. V. P. C. Co.,* 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N. S.) 504, and *Darsam v. Kohlmann.* 123 La. 164, 48 South. 781, 20 L. R. A. (N. S.) 881. Many courts in cases of this kind, as well as in others of a servant against the master, have confused the doctrine of assumption of risk with that of

contributory negligence. I confess that the great num-
ber and. weight of the authorities hold that the doc-
trine of assumption of risk does not apply where the
minor is employed in violation of an express statute;
but the rule is exactly different as to contributory neg-
ligence, and even the courts which hold that contrib-
utory negligence does not apply in these cases say that
the doctrine is doubtful.

The majority opinion quotes a New York case to sus-
tain its conclusion, which has been expressly overrul-
ed in that same case by the New York Court of Ap-
peals. It also cites Mr. Thompson, and yet Mr. Thomp-
son is of the opinion that the rules announced in .this
case are not sound. The case of *Norman v. V. P. C.
Co.,* 68 W. Va. 408, 69 S. E. 858, 31 L. R. A. (N. S.),
504, is the best considered case I have found on the
subject of liability of the master to the minor for per-
sonal injuries, when the employment was in violation
of an express statute. Four of the judges wrote opin-
ions in that case, which shows that the question was
thoroughly considered. While some of the justices dis-
sented, the decision and opinions are valuable. I think
the true rules are thus stated in the majority opinion
in that case: "The true rule is believed to be—and
comparatively few cases when carefully studied will be
found to be in conflict with it—that the fact that the
defendant's act complained of was a violation of a stat-
ute or ordinance is merely a circumstance to be con-
sidered by the jury on the question of negligence, ex-
cept when the court can say, as a matter of law, that
the consequences against which the statute or ordi-
nance was intended to provide have actually ensued
from its violation.—21 Am. & Eng. Enc. Law (2d Ed.)
p. 480. The doctrines in relation to assumption of risk
and of fellow servants do not apply, if the evidence es-

tablishes that the statute against the employment of boys in mines has been violated. The doctrine of contributory negligence, however, is not based upon contract of employment, and is open as a defense in cases like this one. Some of the decisions hold that under no circumstances can contributory negligence avail in a case like the one at hand. But the weight of authority is the other way, and, to our minds, consistent with legal principles. The statute does not in words abrogate the defense. A civil action does not get its force from that statute. It only looks to the violation of the statute for evidence to support the action. Why shall not common-law principles apply?—Bishop, Noncontract Law, § 140, and supra; 20 Am. & Eng. Enc. Law, 151; Watson, Damages for Personal Injuries, § 267; *Queen v. Dayton Coal & I. Co.,* 85 Tenn. 458, 32 S. W. 460, 30 L. R. A. 82, 49 Am. St. Rep. 935; *Rolin v. R. J. Reynolds Tobacco Co.,* 141 N. C. 300, 53 S. E. 891, 7 L. R. A. (N. S.) 335, 8 Ann. Cas. 638; *Sterling v. Union Carbide Co.,* 142 Mich. 284, 105 N. W. 755; and other cases."

I do not mean to say that there are not dicta in other opinions than those of the courts of Illinois to support all the conclusions reached in this case, but I do say that this decision is against the weight and number of authorities, and that the courts of Illinois are the only ones that have gone to the full length of the decision in this case. The opinion in effect holds that the pleas of contributory negligence are not availing in an action for damages by the minor based upon a violation of this statute. To this I cannot agree. If the violation of the statute gives rise to a cause of action, it is one for negligence only; and, if so, a plea of contributory negligence must be availing, because it confesses the negligence alleged, but alleges the

[DeSoto Coal M. & Dev. Co. v. Hill.]

plaintiff's own negligence, as the proximate cause of the injury. This of necessity must be a good defense. It is very true, which I concede, that given acts of the plaintiff may be contributory generally, and would be so but for the statute; but, to say that there cannot be a good plea of contributory negligence to an action brought for a violation of this statute, I cannot agree.

There were pleas of contributory negligence in this case, but the court says they could not be proven, and might be charged out, no matter what the evidence was. To this I cannot agree. I do, of course, agree that a plea which alleges an impossibility, whether it be a legal or a physical impossibility, cannot be proven, and may be charged out of the case; but in fact, in law, and in physics, it is not at all impossible, or even improbable, that a boy 13 years of age may injure himself and be alone responsible for his act, although he was employed to work in a coal mine, and was so working within the line of his employment when he so injured himself. Moreover, in this particular case there was ample evidence, if believed, to support a finding that the boy was 14 years old when employed, and when injured, and for this reason, if for no other, the affirmative charge could not have been properly given for the plaintiff. If there was no dispute in the evidence as to this fact, and the opinion in this case is correct, then the affirmative charge ought to have been given as to all the counts declaring upon a violation of the statute, as well as upon the pleas of contributory negligence, because there was not dispute of the employment of the plantiff nor that he was injured while so employed, and, under the opinion of the court, this was all that was necessary to fix liability on the defendant.

While, as I have before stated, I admit that there are authorities and precedents to support the holding of

the majority in this case, I do not believe that any case can be found like this, where it clearly appears that the boy and his parents, acting together, have, by virtue of this or of any other statute, committed a palpable fraud upon an employer, and have been allowed to reap and enjoy the fruits of their fraud from the very one defrauded, upon no other ground than that the employer was received by their false representations as to the age of the boy. Such a result is wrong in morals as well as in law. If such a result cannot be prevented in a court of law, then surely some court of equity or conscience ought to be able to relieve against such an injustice.

How could this employer have protected himself against this result? The majority answer by saying he ought not to have employed the plaintiff. The defendant is now painfully conscious of that fact, but he was not when he employed the plaintiff, but honestly believed that he ought. It is shown that he had this statute in mind, and did all that prudence dictated to comply with it, and thought that he had done so. He went to the fountain sources to obtain his information as to the age of the boy; that is, to the boy and to his parents and acquaintances. They, with one accord, assured him the boy was 14 years of age. It is shown that the Bible which contained the record of the boy's birth was not in the possession or custody of the boy or of his parents. It was not their family Bible, and it is not shown who made the entries, or when they were made.

SAYRE, J.—I also dissent.